938 A.2d 1137 (2007)
MONTGOMERY COUNTY HEAD START, Petitioner
v.
UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.
Commonwealth Court of Pennsylvania.
Argued October 30, 2007.
Decided December 3, 2007.
Reargument Denied January 30, 2008.
Jason D. Dalton, Bristol, for petitioner.
Paul R. Jordan, Harrisburg, for respondent.
BEFORE: SMITH-RIBNER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.
OPINION BY Judge LEAVITT.
In these consolidated actions, Montgomery County Head Start (Employer) petitions for review of a series of adjudications of the Unemployment Compensation Board of Review (Board) granting benefits to three employees during the summer break between academic years. Teachers employed by an educational institution are, generally, not eligible for unemployment compensation for the weeks of vacation during an academic year or for the weeks of summer vacation between academic *1138 years. However, the Board found that because Employer's Head Start program was not an educational institution, the three employees in question were entitled to unemployment compensation during the summer break. The sole issue before the Court is whether Employer operates an "educational institution" within the meaning of Section 402.1 of the Unemployment Compensation Law (Law), 43 P.S. § 802.1(1).[1]
The relevant facts, as found by the Board, are as follows. Employer's Head Start program prepares three to five year-old children from low income families for kindergarten. These children are taught basic reading and counting skills, along with shape and color recognition; they also receive health, nutritional, psychological, social, speech and language services. Employer operates its program for 10 months every year at various locations throughout Montgomery County, using public school buildings and churches. Each facility follows the schedule of the local school district in which it is located, including snow days and holidays. The program operates every weekday from 8:30 a.m. to 1:00 p.m.
Employer receives funding as a "direct grantee" of the United States Department of Health and Human Services,[2] which monitors its Head Start program. Employer purchases its curriculum from a private entity; this curriculum choice is not required by any local school district. Employer tests enrolled children three times per year, and those test results must satisfy federal standards in order for the program to continue to receive federal funding. Employer is not licensed by the Commonwealth, and its teachers do not have to be certified by the Department of Education. Employer has a contact person within each school district who is responsible for assisting in the enrollment process for children entering kindergarten.
Brenda Hudson, Elena Farber and Kathy Yeagle (collectively, Claimants) work for Employer in professional capacities. Hudson and Farber are full-time teachers, and Yeagle is a full-time teaching assistant. Claimants each worked during the 2005-2006 school year and received, in writing, reasonable assurance of continued employment for the 2006-2007 school year. Claimants filed for unemployment compensation benefits for the weeks they did not work during the summer of 2006. Their claims followed somewhat different procedural paths but the end result in each case was a grant of benefits by the Board.
Section 402.1(1) of the Law, 43 P.S. § 802.1(1), generally prohibits employees of an "educational institution" from collecting unemployment compensation benefits if they are unemployed during their summer vacation, so long as they receive "reasonable assurance" that they will continue to have a job in the next academic year after the summer break.[3] However, the *1139 Board held that Section 402.1(1) was inapplicable to each Claimant because Employer does not operate as an "educational institution." In reaching this conclusion, the Board relied upon federal guidelines that it believed established that a Head Start program is not an "educational institution" unless it is operated by a local board of education. Employer now petitions for review of the Board's decisions.
Before this Court,[4] Employer argues that the Board erred in concluding that it is not an "educational institution" under Section 402.1(1) of the Law. Employer raises two specific issues in this regard. First, Employer contends that the Board erred by relying exclusively upon federal guidelines to construe a state statute. Second, Employer contends that the Board did not adequately consider this Court's precedent in Easter Seal Society for Handicapped Children and Adults of Philadelphia, Bucks, Chester, Delaware and Montgomery Counties v. Unemployment Compensation Board of Review, 720 A.2d 217 (Pa.Cmwlth.1998), which held that a program of the Easter Seal Society, very similar to Employer's Head Start program, was an "educational institution" for purposes of Section 402.1(1) of the Law.
To begin, unemployment insurance has been described as a system of "cooperative federalism" in which each state receives federal funds to reimburse its costs of administering the program. Novak v. Unemployment Compensation Board of Review, 73 Pa.Cmwlth. 148, 457 A.2d 610, 612 (1983). In order for a state to receive reimbursement for its administrative costs it must meet minimum compliance standards set forth in the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301-3320, (FUTA). Glassmire v. Unemployment Compensation Board of Review, 856 A.2d 269, 274 (Pa.Cmwlth.2004). FUTA requires that a state's unemployment law must contain a provision similar to the provision at 26 U.S.C. § 3304(a)(6)(A)(i),[5] which prohibits employees of educational institutions from collecting unemployment benefits between and within academic *1140 terms. The Pennsylvania General Assembly satisfied this requirement by enacting a "between and within terms denial provision" at Section 402.1(1) of the Law. It provides:
(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.
43 P.S. § 802.1(1) (emphasis added). Significantly, the term "educational institution" is not defined in the Law or applicable regulations.
In order to inform itself on the meaning of "educational institution," the Board relied exclusively upon a guideline of the United States Department of Labor set forth in its Unemployment Insurance Program Letter (UIPL) 41-97, 62 Fed.Reg. 60,104-01 (November 6, 1997).[6] In UIPL 41-97, the U.S. Department of Labor responded to an inquiry on whether Head Start programs operated by Community Action Groups are "educational institutions" for purposes of Section 3304(a)(6)(A)(i) of FUTA.[7] The Department responded, in pertinent part, as follows:
Whether Head Start Agencies are Educational Institutions under Clauses (i) and (ii) of Section 3304(a)(6)(A), FUTA. Head Start programs are comprehensive developmental programs designed to meet children's needs in the health (medical, dental, mental, nutritional), social, and education areas. The goal is child adjustment and development at the emotional and social levels, rather than school-type training.
Whether Head Start agencies are "educational institutions" was discussed in UIPL 40-79. That UIPL stated that Head Start programs operated by Community Action Groups do not meet the criteria of "educational institutions," and the between and within terms denial does not, therefore, apply to services performed for such groups. UIPL 40-79 stated, however, that when a local board of education operates a Head Start program as an integral part of the school system in facilities of an educational institution, with Head Start *1141 workers as employees of the board and the schools in every respect, subject to all employing policies, such as hiring, firing, working conditions, as other employees performing services for the educational institution, then such workers are considered to be employed by an educational institution. As such, these workers are subject to the denial provisions in the same manner as are all other educational institution employees. This remains the Department's position.
62 Fed.Reg. 60,104 (November 6, 1997) (emphasis added). Although the Department of Labor stated that the Head Start programs run by Community Action Groups "do not meet the criteria of `educational institutions,'" it did not explain what those criteria were or why the Head Start programs in question did not satisfy them.
Employer argues that the Board erred by relying on UIPL 41-97 because federal guidelines are not binding upon agencies of the Commonwealth and, alternatively, because UIPL 41-97 did not address the kind of Head Start program operated by Employer. We agree with both of Employer's arguments.
This Court's recent decision in Glassmire v. Unemployment Compensation Board of Review, 856 A.2d 269 (Pa. Cmwlth.2004), is instructive on the threshold issue of the authority of federal guidelines in cases requiring a construction of Pennsylvania's Unemployment Compensation Law. In Glassmire, the Board held that the claimant, an instructor at a community college, was ineligible for benefits under Section 402.1(1) of the Law. The legal issue on appeal to this Court was whether the claimant had received "reasonable assurance" of returning to work after the summer break. Claimant argued, inter alia, that the Board erred by failing to apply another guideline of the U.S. Labor Department, UIPL 4-87, to its interpretation of "reasonable assurance."
In rejecting the claimant's argument, we noted that in the "system of cooperative federalism" of unemployment insurance, Pennsylvania's only obligation under FUTA was to enact a "between and within terms denial provision" similar to 26 U.S.C. § 3304(a)(6)(A)(i). Glassmire, 856 A.2d at 274-275. Our General Assembly has satisfied that requirement, which is more accurately described as a prerequisite to the receipt of federal funding, by enacting Section 402.1 of the Law. A federal Unemployment Insurance Program letter, issued to help states interpret FUTA, is simply "not binding authority upon this Court or the agencies of this Commonwealth since it is merely an administrative interpretation of federal law." Id. at 275. The same is true in the case sub judice with respect to UIPL 41-97. It offers nothing more than advice from the U.S. Department of Labor on whether a Head Start program is an "educational institution" for purposes of FUTA.
Assuming UIPL 41-97 were binding, or even persuasive authority on the meaning of a Pennsylvania statute, it does not provide substantive support for the Board's position. UIPL 41-97 is simply a summary of the Department's prior position on whether two specific types of Head Start programs are "educational institutions" under Section 3304(a)(6)(A)(i) of FUTA. UIPL 41-97 states that (1) a Head Start program operated by a "Community Action Group" is not an educational institution and (2) a Head Start program operated by a local board of education as an integral part of a school system is an educational institution.[8] There are several *1142 flaws to the Board's reliance on the summary contained in UIPL 41-97.
First, the Board gave an overly restrictive reading to UIPL 41-97. It believed that UIPL 41-97 means that only a Head Start program operated by a public school district qualifies as an "educational institution." However, UIPL 41-97 did not say that; it merely found that Head Start programs run by Community Action Groups are not educational institutions. UIPL 41-97 does not even state whether the Community Action Groups which it references receive any federal funding, directly or indirectly.
Second, there is no indication that the Department of Labor intended UIPL 41-97 to establish comprehensive standards to be applied to every conceivable type of Head Start program, as would be found in a regulation with the force and effect of law. Employer is a non-profit corporation and a direct grantee of the U.S. Department of Health and Human Services. There is no mention of this third category, i.e., the "direct grantee" type Head Start program, in UIPL 41-97.
Third, the advice given in UIPL 41-97 is too conclusory to provide direction on whether a direct grantee Head Start program can be an educational institution. UIPL 41-97 does not articulate principles that might be helpful in classifying other discrete types of programs, such as Montgomery County Head Start. UIPL 41-97 alludes to "criteria" for determining what constitutes an educational institution, but it does not identify them. As such, it is not very illuminating.
In sum, UIPL 41-97 does not, as believed by the Board, direct the conclusion reached by the Board. UIPL 41-97 does not say what the Board believes it says, i.e., that only Head Start programs operated by local school boards are educational institutions. It does not identify the factors to be used to determine when a Head Start program is an educational institution. Simply, UIPL 41-97 is not a reliable source for resolving the ultimate issue of whether Employer operates an "educational institution" for purposes of federal or state unemployment compensation law.
We turn to Employer's second issue, which is that the Board has failed to follow this Court's precedent. In Easter Seal Society for Handicapped Children and Adults of Philadelphia, Bucks, Chester, Delaware and Montgomery Counties v. Unemployment Compensation Board of Review, 720 A.2d 217 (Pa.Cmwlth.1998), this Court reversed the Board's award of benefits to an employee of the Easter Seal Society School in Montgomery County who was unemployed during the summer of 1997. We held that the Easter Seal program, which provides educational and therapeutic services to disabled children, was an "educational institution" under Section 402.1(1) of the Law. In doing so, we, unlike the drafters of UIPL 41-97, identified the criteria that help determine whether a program is an "educational institution."
Although fact-specific, this Court's analysis in Easter Seal Society is dispositive in the present case.[9] To find the Easter Seal Society School to be an "educational institution," *1143 we cited to the following evidence: various official documents referred to the entity as a school; all parties, including the claimant, referred to the facility as a school; and the Board in its findings of fact stated that claimant worked at a school run by Easter Seal. We emphasized that just because "Easter Seal does not operate a school exclusively, but provides other services that are not academic, does not mean that claimant did not `provide services for an educational institution.'" Easter Seal Society, 720 A.2d at 219. Accordingly, we concluded that the Easter Seal Society School fell within the common understanding of what is an "educational institution."
A review of the undisputed evidence pertaining to Employer's Head Start program yields the same conclusion. The Board and the witnesses, including Claimants themselves, refer to Claimants as teachers. Official documents such as a letter from the Internal Revenue Service concerning Petitioner's tax exempt status indicate that the program is an "educational organization" under the Internal Revenue Code. Reproduced Record at 97a (R.R. ___) (781 CD 2007).[10] The majority of Petitioner's employees, 70 percent, are either teachers or teaching assistants. Board Opinion, April 18, 2007, at 2; Finding of Fact No. 18 (F.F.___). At the time of the hearings, all of Employer's teachers were required to have at least an associate's degree in early childhood education.[11] There is no degree requirement for teaching assistants, however they must complete a Child Development Associate course offered by Penn State University.
Employer's Head Start program, like the Easter Seal program, is not exclusively academic because it also provides health, nutritional, psychological, social, speech and language services. These additional services do not mean that Employer's Head Start program is not an educational institution. Easter Seal Society, 720 A.2d at 219 ("[t]hat Easter Seal does not operate a school exclusively, but provides other services that are not academic, does not mean that [c]laimant did not `provide services for an educational institution'"). If anything, Employer's program is more educational than the Easter Seal program. The Board acknowledged in its factual findings that Employer has adopted an "educational curriculum" and tests its enrolled children several times per year to satisfy stringent federal standards. Board Opinion, April 18, 2007, at 2; F.F. 12, 14, 15. Employer's witnesses described an "educational" program that emphasizes literacy and counting skills, and teaches children basic concepts such as colors, weather, parts of the body, common household items, foods and animals. In light of this evidence, we hold that Employer's Head Start program is an educational institution within the meaning of Section 402.1(1) of the Law.
For the foregoing reasons, we reverse the adjudications of the Board in these consolidated actions.

ORDER
AND NOW, this 3rd day of December, 2007, the orders of the Unemployment *1144 Compensation Board of Review in the above-captioned matters, dated December 22, 2006, April 3, 2007, and April 18, 2007, are hereby REVERSED.
NOTES
[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2987, as amended, added by the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(1).
[2] Petitioner receives some funding from local intermediate units for enrolled children with disabilities.
[3] Section 402.1(1) provides, in relevant part, as follows:

(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.
43 P.S. § 802.1(1).
[4] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Glassmire v. Unemployment Compensation Board of Review, 856 A.2d 269, 272, n. 3 (Pa.Cmwlth. 2004).
[5] It provides:

(a) Requirements.The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that
(6)(A) compensation is payable on the basis of service to which section 3309(a)(1) applies, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law; except that
(i) with respect to services in an instructional, research, or principal administrative capacity for an educational institution to which section 3309(a)(1) applies, compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms (or, when an agreement provides instead for a similar period between two regular but not successive terms, during such period) to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms[.]
26 U.S.C. § 3304(a)(6)(A)(i).
[6] The Employment and Training Administration of the U.S. Department of Labor interprets federal law requirements pertaining to unemployment compensation as part of its role in the administration of the Federal-State Unemployment Compensation program. 62 Fed.Reg. 60,104 (November 6, 1997). These interpretations are issued in Unemployment Insurance Program Letters (UIPLs) to the Pennsylvania Department of Labor and Industry and other state employment security agencies. Id. The UIPLs are published in the Federal Register in order to inform the public. Id.
[7] This was not the first time the Department considered the status of Head Start agencies under FUTA; UIPL 40-79, dated August 3, 1979, addressed the same issue. FUTA was amended after 1979 and UIPL 41-97 was a response to questions from the field as to whether the Department's treatment of Head Start services had changed as a result of those amendments.
[8] The Department suggests that a Head Start program should be considered an "integral part of the school system" when its workers are "employees of the [school] board in every respect, subject to all employing policies, such as hiring, firing, working conditions, as other employees performing services for the educational institution." 62 Fed.Reg. 60,105 (November 6, 1997).
[9] The Board summarily refused to consider Easter Seal Society because "there was no federal guidance on the nature of the employer" in that case. Board Opinion, December 22, 2006, at 3. We have already determined, however, that the "federal guidance" on which the Board relied, UIPL 41-97, is not applicable in the present case.
[10] The IRS letter states that Petitioner is "an organization described in section 509(a)(1) & 170(b)(1)(A)(ii)" of the Internal Revenue Code, 26 U.S.C. §§ 509(a)(1), 170(b)(1)(A)(ii). R.R. 97a (781 CD 2007). These sections refer to "an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on." 26 U.S.C. § 170(b)(1)(A)(ii) (emphasis added).
[11] Effective in 2008, all of Petitioner's teachers must have a bachelor's degree. R.R. 22a (154 CD 2007).