**JUNIATA COUNTY CHILDCARE & DEVELOPMENT SERVICES, INC., Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 2010.
Decided July 29, 2010.
Publication Ordered Oct. 22, 2010.

Lisa Jo Fanelli–Greer, Grantham, for petitioner.

Carol J. Mowery, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

In each of these 12 cases that have been consolidated for appeal, Juniata County Childcare & Development Services, Inc. (Employer) appeals the Unemployment Compensation Board of Review (Board) order finding its 12 former employees (collectively, Claimants) are eligible for unemployment compensation benefits because Employer had not proven that Claimants were employees of an educational institution with reasonable assurances that they would be employed after the regular summer break. It also appeals from the Referee's refusal to grant Employer's request for a subpoena and request for a remand hearing to present additional evidence.

Claimants all worked for Employer in some capacity related to Employer's Head

Start Program.[1] The Claimants are: Bonnie McGowan, a teacher's aide; Rhonda Bierma, a teacher's aide; Donna French, a cook; Shirley Messimer, a rider;[2] Ginger Scholl, a teacher; Cheryl Dodson, a CACFP/nutrition coordinator; Alice Beasom, a rider; Amy Feltman, a health/mental health nutrition manager; Fina Williams, a bus driver; Susan Rowles, a bus driver; Heidi Black, a teacher's aide; and John Zendt, a bus driver. All Claimants, except for Rowles and Dodson, worked 36 weeks per year. Rowles and Dodson worked 52 weeks, but at reduced hours during the summer.

Employer operated the federal Head Start Program in Juniata County as a federal grantee until January 27, 2005, when the program was transferred to Community Development Institute (CDI), an organization that took over Head Start Programs from federal grantees that lost their grant. CDI ran the Head Start Program for one year on an interim basis before a third party became the next federal grantee. As a result of the grant transfer, all employees involved in the Head Start Program, including the 12 listed above, had their employment with Employer terminated on January 27, 2005, and then began working for CDI the next day. All aspects of their employment remained identical after the grant transfer to CDI.

When the school year ended, Claimants each filed for unemployment compensation benefits with the Department of Labor and Industry (Department), and their requests were granted. The Department determined that Section 402.1 of the Unemployment Compensation Law,[3] which makes ineligible for benefits employees of an educational institution unemployed during the summer months with reasonable assurances of continued employment with the educational institution during the next school year, did not apply to Claimants. The Department based this determination on the United States Department of Labor's Unemployment Insurance Program

---

1. Head Start is an early childhood program run through the United States Department of Health and Human Services "that promotes school readiness by enhancing the social and cognitive development of children through the provision of educational, health, nutritional, social and other services to enrolled children and families." Office of Head Start webpage, found at http://www.acf.hhs.gov/programs/ohs.

2. A rider is an employee who rides the school buses with the children.

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, added by the Act of July 6, 1977, P.L. 41 *as amended*, 43 P.S. § 802.1. Section 402.1 provides, in relevant part:

   (1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.
   (2) With respect to services performed after October 31, 1983, in any other capacity for an educational institution, benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms.

Letter (UIPL) No. 41–97.[4] All Claimants except for Williams, who left CDI's employment in the spring of 2005 to work for a private employer, continued their employment with CDI in the fall at the beginning of the next school year. Employer filed timely appeals to these determinations, and a hearing was held before a Referee.

Before the hearings began, Employer requested that the Referee issue a subpoena for certain documents from CDI.[5] According to Employer, these would establish that Claimants had a reasonable assurance of continuing their employment with CDI once the summer ended and school was back in session. Employer stated that CDI was willing to provide the information but that a subpoena was needed in order to comply with federal regulations. The Referee denied the subpoena request stating that it was unenforceable because CDI had a Nebraska address and that even if the documents were provided, Employer would likely not have a witness that could lay a foundation for them. Employer responded that because CDI was willing to cooperate, there was no enforceability issue, and that several of the Claimants themselves had already testified at an earlier hearing, the transcript of which was admitted as an exhibit in this hearing that Claimants had received these documents so there was no foundation issue either. (Reproduced Record at 184–187).[6]

As to the substance of its appeal, James Hartzell, Employer's Board President, testified to the nature of the Head Start Program and the relationship between Head Start, Employer and CDI. According to Hartzell's unrebutted testimony, Head Start is an educational program that gives at-risk children between the ages of three and five an early education that they might not receive otherwise, including basic writing skills, learning colors and the like, similar to a prekindergarten class. Employer received a federal grant that ran from February to January of each year to administer the program, which ran exactly according to the Juniata County School District's schedule. The program continued exactly the same once CDI took over on January 28, 2005. (Reproduced Record at 206–208, 214).

Shannon Foose, Employer's fiscal manager and daycare director, testified that

---

4. 62 F.R. 60104. UIPL 41–97 provides, in pertinent part:

Head Start programs are comprehensive developmental programs designed to meet children's needs in the health (medical, dental, mental, nutritional), social, and education areas. The goal is child adjustment and development at the emotional and social levels, rather than school-type training
...
Head Start programs operated by Community Action Groups do not meet the criteria of "educational institutions," and the between and within terms denial does not, therefore, apply to services performed for such groups. UIPL 40–79 stated, however, that when a local board of education operates a Head Start program as an integral part of the school system in facilities of an educational institution, with Head Start workers as employees of the board and the schools in every respect, subject to all employing policies, such as hiring, firing, working conditions, as other employees performing services for the educational institution, then such workers are considered to be employed by an educational institution. As such, these workers are subject to the denial provisions in the same manner as are all other educational institution employees.

5. Employer had earlier made the same subpoena request to the Referee in writing, which the Referee denied.

6. The Referee incorporated into the record as an exhibit the transcript of testimony taken from various claimants before the same Referee, some of whom included the Claimants in this case.

each Head Start employee would receive a one-year contract in February which covered nine months (excluding summers) for the majority of the employees. Once the school year ended, the employees would not receive any notice regarding returning for the following year until August, when a letter would be sent to them concerning orientation for the next school year. (Reproduced Record at 297–298). The notification procedure did not change when CDI took over the program. Susan Yorks, an administrator/secretary/receptionist with the Head Start Program who also received unemployment compensation benefits and was a claimant at that time, testified that CDI did not provide its Head Start employees with a letter in the spring that they would return in the fall. Instead, CDI contacted the employees in August to notify them that they would be returning. (Reproduced Record at 312–313). There was no testimony regarding whether CDI had similar one-year contracts with the Head Start employees, which could have been obtained by a subpoena to CDI for this information.

Cynthia Dau, an employment specialist for the Department, testified that Claimants Williams' and Beasom's status differed from those of the other Claimants. Claimant Williams, a bus driver, left CDI at the end of February 2005 to work for a private, for-profit employer that employed school bus drivers. He lost his job with that employer on June 3, 2005, due to lack of work and subsequently filed for unemployment compensation benefits like the other Claimants. Claimant Beasom, a rider, differed from the other employees because she, alone out of all the Claimants, received a reasonable assurance that she would return to work after her summer break due to a payroll change notification from CDI that indicated that she would return to work on September 6, 2005. Employer's counsel renewed her request

for a subpoena of CDI to determine if CDI had payroll change notifications for the other 11 Claimants, but the Referee again denied her request. (Reproduced Record at 229–244). Ms. Dau also confirmed that the Department's determination was based on the federal guidelines outlined in UIPL 41–97.

The Referee issued separate but substantially similar determinations for each of the 12 Claimants. In his determinations, he found that Employer operated a Head Start Program that was then transferred to CDI; that the Claimants worked for Employer, then CDI without a break until summer; and that Claimants (except Williams) returned to work with CDI the following year. The Referee made *no* findings of fact based on the substantial testimony detailed above concerning the nature of the Head Start Program, the nature of the work performed by the Claimants for Head Start, the relationship between Head Start and the Juniata County School District, the normal summer procedure for Head Start employees, and whether that procedure was followed by CDI. He made *no* findings of fact based upon any testimony of Employer's witnesses and *no* findings of fact based upon the 56–page transcript of the earlier hearing that was made part of the record in this case. He did not determine that any of this testimony was not credible, but simply was silent concerning it.

In his "Reasoning" section, the Referee quoted Section 402.1 of the Unemployment Compensation Law. He then offered a one-paragraph analysis of whether Claimants were employed at an educational institution and whether they received reasonable assurances of returning to work in the fall. He concluded, without offering any reasoning, that he need not consider the question of whether Employer was an educational institution and that there was no compe-

tent evidence that CDI's Head Start Program could be considered an educational institution. He also concluded that Employer had presented no evidence that CDI provided reasonable assurances that Claimants would return to work in the fall. He made *no mention* of Employer's contentions that federal regulations prevented CDI from releasing any information regarding Claimants without a subpoena or that he repeatedly denied Employer's request for a subpoena so it could present the very information that the Referee determined was missing.

Employer filed a mass appeal to the Board, arguing that the Referee's failure to address whether Employer was an educational institution and conclude that it was so was error, that the testimony was sufficient to show Claimants were nine-month employees with reasonable assurances of returning to work in the fall, and that the Referee's failure to grant Employer's subpoena request and his subsequent use of a lack of documentation that could only have been obtained by the subpoena against Employer violated due process and required a remand hearing. Without analysis, the Board concluded that the Referee's determination was proper. With regard to the subpoena and remand requests, the Board determined that because Employer had not established that CDI was an educational institution, it was irrelevant whether there was evidence that Claimants had reasonable assurances of returning to work in the fall. It, thus, affirmed the Referee's determination in its entirety. This consolidated appeal followed.[7]

Section 402.1 of the Unemployment Compensation Law governs whether Claimants are ineligible for unemployment compensation benefits. Section 402.1 provides, in relevant part:

(1) **With respect to service performed** after December 31, 1977, **in an instructional**, research, or principal administrative **capacity for an educational institution, benefits shall not be paid** based on such services **for any week of unemployment commencing during the period between two successive academic years,** or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and **if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years** or terms.

(2) **With respect to services performed** after October 31, 1983, **in any other capacity for an educational institution,** [the same provisions shall apply as for those covered by section 1].

(Emphasis added). Thus, in order for Claimants to be ineligible for unemployment compensation benefits, Employer must prove (1) that Claimants were employed by an educational institution and (2) that they had a reasonable assurance of continued employment following their summer break in service.

Employer contends that Claimants, who are teachers, teachers' aides, bus drivers

---

7. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Glassmire v. Unemployment Compensation Board of Review,* 856 A.2d 269 (Pa.Cmwlth.2004).

and the like, and who worked for a Head Start Program, were employed by an educational institution both during their time with Employer and with CDI. On the matter of reasonable assurances of continued employment, Employer contends that the testimony showed that Claimants were never separated from their work, but rather were on a regularly scheduled summer break from the school year and routinely returned to work in the fall. Furthermore, it argues that the Referee and the Board erred by denying Employer's subpoena and remand requests, and in doing so, violated Employer's due process rights to a fair hearing by using the lack of evidence that could only have been obtained through the subpoena against Employer. Finally, Employer contends that the Referee and the Board ignored and capriciously disregarded competent evidence and testimony of record with regard to both the educational institution and reasonable assurance issues, which is evidenced by the numerous missing findings of fact.

In response, the Board contends that its findings of fact are binding because Employer did not challenge them in its petition for review. It further argues that Employer failed to establish that CDI was an educational institution or that Claimants had reasonable assurances that they could return to work. It also argues that it did not abuse its discretion in denying Employer's remand request because the information sought to be obtained through the subpoena was unnecessary because it did not need to reach the issue of whether Claimants had reasonable assurances of returning to work.

## I.

█ Because the Board's contention that its findings of fact are binding because Employer did not challenge them in its petition for review are crucial to the resolution of the substance of the case, we will address this issue first. While it is true that the Board's findings of fact are binding on appeal if not challenged, *Owens v. Unemployment Compensation Board of Review,* 748 A.2d 794 (Pa.Cmwlth.2000), the Board's contention that Employer did not challenge its findings of facts in its petition for review is patently false. Employer's petition for review states:

14. The Referee and the UCBR ignored and capriciously disregarded competent evidence and testimony of record from Petitioner (that is, Employer) as well as the Claimants themselves which was admitted into the record without any objection from the Department's counsel at the Referee's hearing and which showed that the Claimants were not separated from their employment but instead were on a routine summer break from the school calendar year and returned to work in the Fall of every year.

15. The UCBR's adopted findings of facts, including but not limited to, Findings of Fact Number 13(sic) is not supported by substantial evidence.

16. There are also missing Findings of Fact which are necessary and which were not made by either Referee Parr or the UCBR, including but not limited to, findings regarding the Claimants returning to work after the summer break with CDI, findings regarding notices of reasonable assurance that the Claimants themselves received from CDI, findings regarding the nature of the Headstart (sic) program that was run initially by Petitioner and then by the interim grantee, CDI.

Clearly, Employer raised the issue whether there was substantial evidence for the Board's findings of fact.

## II.

### A.

Under the first prong of the test set forth in Section 402.1 of the Unemployment Compensation Law, Employer must prove that Claimants were employed by an educational institution. Employer argues that the cases of *Montgomery County Head Start v. Unemployment Compensation Board of Review*, 938 A.2d 1137 (Pa. Cmwlth.2008), and *Easter Seal Society for Handicapped Children and Adults of Philadelphia, Bucks, Chester, Delaware and Montgomery Counties v. Unemployment Compensation Board of Review*, 720 A.2d 217 (Pa.Cmwlth.1998), are conclusive that an organization that operates a Head Start Program is an educational institution and that the Referee and Board were prohibited from using UIPL 41–97 as a justification for concluding otherwise.

■ In *Montgomery County Head Start*, this Court squarely held that a direct federal grantee that operates a Head Start Program is an educational institution. In so doing, we examined our earlier holding in *Easter Seal Society*, explaining:

> To find the Easter Seal Society School to be an "educational institution," we cited to the following evidence: various official documents referred to the entity as a school; all parties, including the claimant, referred to the facility as a school; and the Board in its findings of fact stated that claimant worked at a school run by Easter Seal. We emphasized that just because "Easter Seal does not operate a school exclusively, but provides other services that are not academic, does not mean that claimant did not 'provide services for an educational institution.'" *Easter Seal Society*, 720 A.2d at 219. Accordingly, we concluded that the Easter Seal Society School fell within the common under-

standing of what is an "educational institution."

A review of the undisputed evidence pertaining to Employer's Head Start program yields the same conclusion. The Board and the witnesses, including Claimants themselves, refer to Claimants as teachers. Official documents such as a letter from the Internal Revenue Service concerning Petitioner's tax exempt status indicate that the program is an "educational organization" under the Internal Revenue Code. The majority of Petitioner's employees, 70 percent, are either teachers or teaching assistants. At the time of the hearings, all of Employer's teachers were required to have at least an associate's degree in early childhood education. There is no degree requirement for teaching assistants, however they must complete a Child Development Associate course offered by Penn State University.

*Employer's Head Start program, like the Easter Seal program, is not exclusively academic because it also provides health, nutritional, psychological, social, speech and language services. These additional services do not mean that Employer's Head Start program is not an educational institution ... In light of this evidence, we hold that Employer's Head Start program is an educational institution within the meaning of Section 402.1 of the Law.*

*Montgomery County Head Start*, 938 A.2d at 1142–43. (Emphasis added). Furthermore, we held that UIPL 41–97, which the Board relied on in *Montgomery County Head Start*, was "not binding authority on this Court or the agencies of this Commonwealth" and is "nothing more than advice from the U.S. Department of Labor" on whether a Head Start Program run by a community action group is an educational

institution for the purposes of a federal law. *Id.* at 1141.

Here, while there is less information of record than in *Montgomery County Head Start,* the findings of fact, paltry as they are, do state that both Employer and CDI operated a Head Start Program and that they were both direct recipients of federal grants that funded the program. Additionally, the Claimants include a teacher and three teacher's aides, in addition to bus drivers and riders and other personnel normally found at a school. These findings are sufficient to bring this case under the ambit of *Montgomery County Head Start* and mandate a finding that Employer and CDI operated educational institutions.[8]

This conclusion, however, does not hold for Claimant Williams, who left CDI after one month and finished the 2005 school year working for Leroy J. Stewart, a private, for-profit employer, before losing his job at the beginning of the summer break. Therefore, the Board's order in Williams' case is affirmed. For the other 11 Claimants, it is necessary to examine whether Employer proved that they had reasonable assurances of continuing work in the fall.

### B.

■ Employer contends that the testimony before the Referee established that most of the Claimants were nine-month employees who regularly did not work during the summer then began work again in the fall; that this practice had continued for many years; that nothing about the Head Start Program changed when CDI took over; and that Claimants admitted that they received a mailing in the summer from both Employer and CDI informing them that they would return to work in the fall was sufficient to show that they had reasonable assurances in the summer of 2005 as well that they would return to work in the fall. However, neither the Referee nor the Board made any findings of fact with regard to any of these matters. When there are no findings of fact on critical issues, the remedy is a remand to the factfinder. *Metelo v. Workmen's Compensation Appeal Board (Old Original Bookbinders Restaurant),* 164 Pa.Cmwlth. 348, 642 A.2d 653 (1994). Furthermore, because the Board determined that CDI was not an educational institution, it did not reach the issue of whether the Claimants had reasonable assurances that their jobs would continue in the fall.

More troubling is the Referee's ruling, to which the Board assented, that Employer could not meet its burden of proving that Claimants had reasonable assurances of continued employment because it did not have any evidence that CDI gave Claimants such assurance. Employer's counsel requested, both before the hearing and numerous times during it, a subpoena on CDI so that it could have access to documents that it claimed would provide this information. Despite Employer's ar-

---

8. Because the information contained in the Referee's findings of fact, as adopted by the Board, are sufficient to show that Employer and CDI were educational institutions, we need not consider Employer's argument that there are missing findings of fact as they relate to the educational institution issue.

However, we do note that the testimony by Mr. Hartzell that Head Start is an educational program similar to a pre-kindergarten program and that it runs in sync with the Juniata County School District's school schedule was not refuted and, therefore, was sufficient, even absent this Court's holdings in *Montgomery County Head Start* and *Easter Seal Society,* for the Referee to have found that it met Employer's burden of proof that it and CDI, as the organizations that operated Head Start, are educational institutions. It is unclear why the Referee omitted any reference to this testimony in his findings of fact.

gument that CDI was willing to provide the documents but only was unable to absent a subpoena due to a federal regulation, and that these documents were essential to its case, the Referee nevertheless refused the subpoena request.

■ A referee has discretion to refuse to issue a subpoena. *Alston v. Unemployment Compensation Board of Review*, 967 A.2d 432 (Pa.Cmwlth.2009). However, this discretion is not absolute. A referee may not refuse to issue a subpoena, then rule against the party that requested the subpoena because it did not offer into evidence the very information that the party could only have obtained through the subpoena that the referee declined to issue. In *Hamilton v. Unemployment Compensation Board of Review*, 110 Pa.Cmwlth. 384, 532 A.2d 535, 537(1987), we stated:

> This Court has recently held that the referee or Board, in their discretion, may refuse to issue a subpoena where the subpoenas were being requested for purposes of harassment or to commence a "fishing expedition." *Zukoski v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 270, 525 A.2d 1279, 1280 (1987). However, nothing in *Zukoski* relieves the Board of its obligation to issue subpoenas in cases where the issuance of the subpoena would lead to relevant and probative testimony. *See Miller v. Unemployment Compensation Board of Review*, 99 Pa.Cmwlth. 137, 512 A.2d 797 (1986). This would be particularly true in the instant matter, wherein the petitioner alleges that he was terminated for expressing his opinion that he was passed over for promotion as a result of racial bias.

■ In the instant matter, the Referee was informed that CDI had documents which Employer claimed would establish that Claimants had reasonable assurances of continuing their employment with CDI once the summer ended and school was back in session, and that CDI would supply the documents but needed a subpoena to comply with federal regulations. Nonetheless, the Referee prevented Employer from being heard by repeatedly stymieing every attempt by Employer to obtain critical information for its case and then ruling against Employer because it did not have that very same information. The Referee's stated reasons for refusing to issue the subpoena were its unenforceability because it was going out of state and because Employer might not have been able to lay a foundation for the documents it obtained. Both reasons were patently absurd. Enforceability was not an issue because CDI had already agreed to provide all the documents, and it was merely awaiting the subpoena before releasing them to Employer so that it could comply with a federal regulation. In any event, whether the subpoena was unenforceable or not is not for the Referee to determine. Rather, the Referee only may determine whether the requested subpoena would lead to probative evidence. As for laying a foundation, there was nothing to prevent Employer from calling a witness who could lay a sufficient foundation for the documents. The Referee's "guess" that Employer would be unable to find such a witness should not have prevented Employer from attempting to do so. Because the requested subpoenas went to a core issue in the case—whether reasonable assurance of continued employment existed—it was an abuse of discretion and a denial of due process to not issue the subpoena.

For the foregoing reasons, the Board's order with regard to Claimant Williams is affirmed. The Board's order with regard to Claimant Beasom is reversed.[9] The

9. The Department admitted in the hearing before the Referee that Claimant Beasom had

Board's orders in the other ten cases are reversed to the extent the Board did not find Employer and CDI to be educational institutions and remanded for the sole purpose of determining whether the ten Claimants had reasonable assurances that they would still have jobs when the summer break ended.

### ORDER

AND NOW, this *29th* day of *July*, 2010, the order in Decision No. B–490880 of the Unemployment Compensation Board of Review (Board) dated November 3, 2009, is affirmed. The order in Decision No. B–490873 of the Board dated November 3, 2009, is reversed. The orders in Decision Nos. B–490869, B–490870, B–490871, B–490872, B–490874, B–490875, B–490876, B–490877, B–490878, and B–490879 of the Board dated November 3, 2009, are reversed to the extent they determined that Juniata County Childcare & Development Services, Inc. and Community Development Institute were not educational institutions and remanded to the Board for the sole purpose of determining whether the claimants in the ten decisions listed above had reasonable assurances that their employment with Community Development Institute would continue in the 2005–2006 school year.

reasonable assurances that she would return to work in the fall. Thus, as Beasom worked for Employer and CDI, both educational institutions, and had reasonable assurances that her job would continue after the summer break, she was ineligible for unemployment compensation benefits pursuant to Section 402.1. Therefore, we reverse the Board's order in Beasom's case.