# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2013 Term

_____

No. 11-1386

_____

FILED

**March 12, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent Below

V.

MICHAEL J. McGILL,
Petitioner Below

_____

Appeal from the Circuit Court of Marshall County
Honorable Mark A. Karl, Judge
Criminal Action No. 2009-F-71

AFFIRMED

_____

Submitted: January 16, 2013
Filed: March 12, 2013

Robert G. McCoid                            Patrick Morrissey
McCamic, Sacco & McCoid                     Attorney General
Wheeling, West Virginia                     Robert D. Goldberg
Attorney for Petitioner                     Assistant Attorney General
                                            Charleston, West Virginia
                                            Attorney for Respondent

JUSTICE DAVIS delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.	The subpoena authority under W. Va. Code § 57-5-4 (1990) (Repl. Vol. 2012) requires a legal proceeding be pending in order for a subpoena duces tecum to issue.

2.	The subpoena authority under Rule 17 of the West Virginia Rules of Criminal Procedure requires a legal proceeding be pending in order for a subpoena duces tecum to issue.

3.	"Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus point 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

**Davis, Justice:**

This is an appeal by Michael J. McGill (hereinafter "Mr. McGill") from an order of the Circuit Court of Marshall County resentencing him to one year incarceration upon a conviction of simple battery.[1] In this appeal, Mr. McGill contends that the trial court committed reversible error by admitting his medical records into evidence during his trial. After a careful review of the briefs and record submitted on appeal, and listening to the arguments of the parties, we affirm.[2]

## I.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts of this case began at a campground on Fish Creek, in Marshall County, West Virginia. On Friday, June 12, 2009, Mr. McGill, his wife, Becky McGill, and their daughter went to the campground for the weekend. Also on the same day, Mr. McGill's cousin, Sheila McGill, traveled to the same campground to spend the weekend at a campsite that was immediately adjacent to Mr. McGill's campsite. Sheila McGill had a friend with her named Mary Ratliff. At some point during the course of the day on June

---

[1]Mr. McGill was resentenced for appeal purposes by an order entered December 3, 2011.

[2]We note that while this case was pending, Attorney General Patrick Morrissey was sworn in and replaced former Attorney General Darrell V. McGraw, Jr. *See* W. Va. R. App. P. 41(c) ("When a public officer is a party to an appeal or other proceeding in the Supreme Court in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and his successor is automatically substituted as a party.").

1

13, 2009, a man by the name of Michael Yoho was driving an ATV near the campground. Becky McGill recognized Mr. Yoho as he drove by and invited him over to the campsite. Mr. Yoho accepted the invitation and was introduced to Mr. McGill, Sheila McGill, and Mary Ratliff.

At some point just before dusk, Mr. McGill, his wife, and Mr. Yoho decided to go to a nearby general store/tavern to buy some beer and cigarettes. The record indicates that the three individuals were gone from the campsite for about an hour or less. The testimony at trial revealed that after the three individuals returned, Mr. McGill began beating on Mr. Yoho for apparently making "a pass" at Becky McGill. Mr. McGill was seen punching Mr. Yoho to the ground and kicking him. Sheila McGill attempted to stop Mr. McGill, and, in the process, he knocked her to the ground. Mr. McGill eventually struck Sheila McGill in the head with a dust mop.

Although Mr. Yoho's face was bloodied, he was able to leave the campsite on his own. The next day, June 14, relatives of Mr. Yoho contacted the local sheriff to report that he had not come home and was missing. Mr. Yoho was found dead on June 15 with his body pinned against a tree by his ATV.[3] The details are not clear in the record, but somehow the sheriff's office was informed that Mr. Yoho had been beaten on the previous day by Mr.

---

[3]Mr. McGill was never implicated in the death of Mr. Yoho.

McGill. An investigation was made at the campsite on the same day that Mr. Yoho's body was found. It appears that, during the course of the investigation, the police learned that Mr. McGill had gone to a hospital to have his right hand and left foot examined. Immediately after the police learned that Mr. McGill had gone to the hospital for injuries sustained in the fight, they obtained a court order compelling the hospital to turn over Mr. McGill's health records.[4]

On November 10, 2009, a grand jury indicted Mr. McGill on one count of malicious assault of Mr. Yoho and on one count of third offense domestic battery against Sheila McGill. Prior to trial, Mr. McGill filed a motion in limine to prevent the prosecutor from introducing his medical records into evidence. Mr. McGill argued, in essence, that the circuit court did not have authority to issue the order requiring his medical records to be turned over. The trial court denied the motion, and the prosecutor introduced the medical records into evidence during the trial. A jury ultimately returned a verdict finding Mr. McGill not guilty of third offense domestic battery but found him guilty of simple battery as a lesser included offense of malicious assault. This appeal followed.

---

[4]The prosecutor actually obtained the court order.

3

## II.

## STANDARD OF REVIEW

This case presents a single issue for resolution. That issue is whether the trial court properly denied Mr. McGill's motion to suppress the introduction of his medical records into evidence.[5] In *State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995), this Court explained the standard of review of a circuit court's ruling on a motion to suppress is a two-tier standard:

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*Lilly*, 194 W. Va. at 600, 461 S.E.2d at 106 (internal citations and footnote omitted). This Court further has explained:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the

---

[5]Although Mr. McGill did not label his motion as a motion to suppress, that was the essence of the motion.

4

circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). With these standards in mind, Mr. McGill's arguments will be considered.

## III.

## DISCUSSION

In this proceeding, Mr. McGill has set out two substantive arguments. First, he argues that the trial court's order requiring his medical records be turned over was an invalid search warrant. Second, Mr. McGill contends that the order was an improperly issued subpoena duces tecum. Insofar as the State neither argued below nor in this appeal that the order was a search warrant, we need not address that issue.[6]

Mr. McGill contends that the purported subpoena duces tecum issued by the circuit court was not in compliance with W. Va. Code § 57-5-4 (1990) (Repl. Vol. 2012) or

---

[6]It will be mentioned in passing that, under the facts of this case, the order requiring the production of Mr. McGill's medical records simply was not a search warrant. As a fundamental matter, the purpose of a search warrant is to permit the police to search and seize contraband; whereas a subpoena duces tecum requires a named person or entity to turn over certain items for inspection. The order in this case required medical records be turned over for inspection. *See In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000) (discussing differences between search warrant and subpoena duces tecum).

5

Rule 17 of the West Virginia Rules of Criminal Procedure.[7] We note initially that "interpretations of statutes and rules are subject to a *de novo* review." Syl. pt. 1, in part, *State v. Head*, 198 W. Va. 298, 480 S.E.2d 507 (1996). *See* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). A basic rule of statutory construction provides that "'[w]hen a statute [or rule] is clear and unambiguous and the [drafter's] intent is plain, the statute [or rule] should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute [or rule].'" *Snider v. Fox*, 218 W. Va. 663, 667, 627 S.E.2d 353, 357 (2006) (quoting Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959)). We will address the statutory and rule-based arguments separately.

---

[7]In Mr. McGill's pretrial motion in limine, he also argued that his medical records were obtained in violation of the federal Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1320d-1320d9 ("HIPAA"). However, in this appeal, Mr. McGill has not raised the issue of a HIPAA violation. *See Mezu v. Morgan State University*, No. 11-2396, 2012 WL 4041299, at 3 (4th Cir. Sept. 14, 2012) ("HIPAA also permits release of such records 'in response to a subpoena, discovery request, or other lawful process.' 45 C.F.R. § 164.512(e)(1)(ii)."). "To the extent that the issue was raised below, but not on appeal, it is deemed waived." *Mack-Evans v. Hilltop Healthcare Ctr., Inc.*, 226 W. Va. 257, 264 n.12, 700 S.E.2d 317, 324 n.12 (2010). *See also State v. Lockhart*, 208 W. Va. 622, 627 n.4, 542 S.E.2d 443, 448 n.4 (2000) ("Assignments of error that are not briefed are deemed waived.").

### A. Issuance of subpoena under W. Va. Code § 57-5-4.

Mr. McGill asks this Court to determine whether the prosecutor had authority to obtain the subpoena under W. Va. Code § 57-5-4 when no legal proceeding was pending against him.[8]  It is provided under W. Va. Code § 57-5-4, in relevant part, that,

> [w]hen it appears by affidavit or otherwise that a . . . document in the possession of *any person not a party to the matter in controversy* is material and proper to be produced before the court, . . . such court . . . may order the clerk of the said court to issue a subpoena duces tecum to compel such production at a time and place to be specified in the order.

(Emphasis added). Mr. McGill contends that the use of the phrase "not a party to the matter in controversy" in W. Va. Code § 57-5-4 "presupposes the existence of an active case[.]"  We agree with Mr. McGill.

To understand the application of W. Va. Code § 57-5-4, we must examine the statute together with W. Va. Code § 57-5-3 (1923) (Repl. Vol. 2012).[9]  Such an

---

[8]It will be noted that the State did not address the issue of the application of W. Va. Code § 57-5-4 in its brief or supplemental brief.  The State merely quoted the statute in a footnote in its brief without any discussion.  The State filed its supplemental brief at the request of this Court.

[9]Prior to the adoption of the Rules of Criminal Procedure in 1981, W. Va. Code § 57-5-3 and W. Va. Code § 57-5-4 exclusively governed the issuance of subpoenas in criminal and civil proceedings.  As a result of this Court's constitutional rule making authority, Rule 17 of the West Virginia Rules of Criminal Procedure is now the controlling authority for issuance of subpoenas in criminal proceedings.  However, W. Va. Code §
(continued...)

analysis is consistent with our recognition that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). This Court has held that "statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in para materia to assure recognition and implementation of the legislative intent." Syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving and Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975).

The relevant language set out under W. Va. Code § 57-5-3 provides as follows:

> In any case at law, *upon a party making affidavit* that a particular book of accounts, or other writing or paper is important for him to have in the trial of his cause, he may

---

[9](...continued)

57-5-4 and W. Va. Code § 57-5-3 are still valid subpoena authorities in criminal proceedings to the extent that they are not in conflict with Rule 17. *See State ex rel. Rusen v. Hill*, 193 W. Va. 133, 142, 454 S.E.2d 427, 436 (1994) (observing prosecutor could have attempted "to obtain a subpoena duces tecum pursuant to W. Va. Code, 57-5-4."). We previously have made clear that "[t]he West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect." Syl. pt. 5, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999). *See also State v. Davis*, 178 W. Va. 87, 90, 357 S.E.2d 769, 772 (1987) (holding that W. Va. R. Crim. P. Rule 7(c)(1) supersedes the provisions of W. Va. Code § 62-9-1, to the extent that the statute requires the indorsement of the grand jury foreman and attestation of the prosecutor on the reverse side of the indictment), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994).

procure from the clerk of the court in which the action is pending a subpoena duces tecum requiring any party to the action to appear before the court on a day named therein, and bring with him and produce before such court such book of accounts, or other writing or paper, as is specified in such process, in order that the same may be used as evidence on the trial of the action.

(Emphasis added). The purpose of W. Va. Code § 57-5-3 is to permit a "party" in a litigation to issue a subpoena duces tecum against another "party" in the litigation. This purpose is set out in the statute's heading, which states: "Production of writings – By party." The heading of W. Va. Code § 57-5-4 states: "Production of writings – By person other than party." Reading W. Va. Code § 57-5-3 and W. Va. Code § 57-5-4 together, it is clear that both statutes require the commencement of a legal proceeding[10] in order for a subpoena to issue. Consequently, we now hold that the subpoena authority under W. Va. Code § 57-5-4 (1990) (Repl. Vol. 2012) requires a legal proceeding be pending in order for a subpoena duces tecum to issue.[11]

---

[10]The phrase "legal proceeding" includes the commencement of a criminal or civil action, a grand jury proceeding, or a statutorily authorized administrative proceeding.

[11]In addition to the requirement of W. Va. Code § 57-5-4 that a legal proceeding exist for a subpoena to issue thereunder, the Legislature has also enacted a specific statute addressing the requirements for obtaining medical records through a subpoena. The relevant language of W. Va. Code § 57-5-4b (1981) (Repl. Vol. 2012) provides:

Except as hereinafter provided, when a subpoena duces tecum is served upon a custodian of records of any hospital . . . *in an action or proceeding* in which the hospital is neither a party nor the place where any cause of action is alleged to have

(continued...)

The question we now address is whether a recognizable legal proceeding was pending when the prosecutor obtained Mr. McGill's medical records. The evidence in this case shows that the prosecutor filed a "Motion to Compel Surrender of Medical Records" with the circuit court in order to obtain Mr. McGill's medical records. This motion was styled "State v. Criminal Investigation (Michael J. McGill.)" At the time this motion was filed no criminal complaint or indictment was pending against Mr. McGill with respect to a crime against Mr. Yoho. Further, no grand jury proceeding was pending with allegations against Mr. McGill regarding a crime against Mr. Yoho. In fact, the record does not disclose any lawfully recognized legal proceeding that would support the prosecutor's motion and the subsequent issuance of a subpoena duces tecum under W. Va. Code § 57-5-4. Consequently, W. Va. Code § 57-5-4 could not be relied upon as authority for issuance of the subpoena.[12]

---

[11](...continued)
arisen and such subpoena requires the production of all or any part of the records of the hospital relating to the care or treatment of a patient in such hospital, it shall be sufficient compliance therewith if the custodian or other officer of the hospital shall, on or before the time specified in the subpoena duces tecum, file with the court clerk or the officer, body or tribunal conducting the hearing, a true and correct copy . . . of all records described in such subpoena.

(Emphasis added.) It is clear that W. Va. Code § 57-5-4b contemplates medical records being released through a subpoena issued in a pending legal proceeding.

[12]The prosecutor argued below, but not in this appeal, that the motion was filed pursuant to Rule 47 of the West Virginia Rules of Criminal Procedure. Rule 47 provides:
(continued...)

This Court has canvassed every statute in our Code that authorizes the issuance of a subpoena.[13] In doing so, we uncovered only one statute that a prosecutor

[12](...continued)

> An application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. It shall state the grounds upon which it is made and shall set forth the relief or order sought. It may be supported by affidavit.

While we need not address this issue because it has been waived, we will note as a general matter that Rule 47 does not apply to a prosecutor's pre-charging investigation. Rule 47 may be invoked only when a criminal proceeding has been filed in a circuit court.

[13]*See, e.g.* W. Va. Code § 3-1A-6 (2008) (Repl. Vol. 2011) (subpoena power of Secretary of State); W. Va. Code § 4-1-5 (1996) (Repl. Vol. 2011) (subpoena power of Legislature); W. Va. Code § 5-11-8 (1998) (Repl. Vol. 2011) (subpoena power of Human Rights Commission); W. Va. Code § 6B-2-2 (2005) (Repl. Vol. 2010) (subpoena power of State Ethics Commission); W.Va. Code § 11-10-5b (1986) (Repl. Vol. 2008) (subpoena power of Tax Commissioner); W. Va. Code § 14-2-22 (1967) (Repl. Vol. 2009) (subpoena power of Court of Claims); W. Va. Code § 17C-5A-2 (2012) (Supp. 2012) (subpoena power of DMV Office of Administrative Hearings); W. Va. Code § 19-5A-10 (1967) (subpoena power of Commissioner of Agriculture); W. Va. Code § 19-23-6 (2011) (Supp. 2012) (subpoena power of Racing Commission); W. Va. Code § 21A-2-21 (1963) (Repl. Vol. 2008) (subpoena power of the Commissioner of the Bureau of Employment Programs); W. Va. Code § 23-5-8 (2005) (Repl. Vol. 2010) (subpoena power of Workers' Compensation Office of Judges); W.Va. Code § 24-2-10 (1923) (Repl. Vol. 2008) (subpoena power of Public Service Commission); W. Va. Code § 29-3-12 (2010) (Supp. 2012) (subpoena power of State Fire Marshal); W. Va. Code § 29-5A-2 (1976) (Repl. Vol. 2008) (subpoena power of State Athletic Commission); W. Va. Code § 29-22-5 (2001) (Repl. Vol. 2008) (subpoena power of State Lottery Commission); W. Va. Code § 29A-5-1 (1964) (Repl. Vol. 2012) (subpoena power under the Administrative Procedures Act); W. Va. Code § 30-3-7 (subpoena power of West Virginia Board of Medicine); W. Va. Code § 30-25-15 (2010) (Repl. Vol. 2012) (subpoena power of West Virginia Nursing Home Administrators Licensing Board); W. Va. Code § 30-27-21 (2009) (Repl. Vol. 2011) (subpoena power of Board of Barbers and Cosmetologists); W. Va. Code § 30-30-27 (2011) (Repl. Vol. 2012) (subpoena power of Board of Social Work); W. Va. Code § 31A-8-1 (1969) (Repl. Vol. 2009) subpoena power of Commissioner of Banking); W. Va. Code § 33-2-4 (2003) (Repl. Vol. 2011) (subpoena

(continued...)

could invoke to obtain a criminal investigatory subpoena outside the context of a legal

proceeding. In 2011, the Legislature enacted Article 1G of Chapter 62 of our Code. *See*

W. Va. Code § 62-1G-1 *et seq.* Article 1G is entitled: "Subpoena Powers for Aid of

Criminal Investigation Relating to Certain Offenses Against Minors." Under W. Va.

Code § 62-1G-1 (2011) (Supp. 2012), the Legislature declared "that it is necessary to

grant subpoena powers in aid of criminal investigations of certain crimes against minors

involving electronic communications systems or services or remote computing

services."[14] Obviously, this Article does not apply in the case *sub judice* because it was

---

[13](...continued)
power of Insurance Commissioner); W. Va. Code § 46A-7-104 (1974) (Repl. Vol. 2011) (subpoena power of Attorney General under Consumer Credit and Protection Act); W. Va. Code § 47-18-7 (1978) (Repl. Vol. 2006) (subpoena power of Attorney General under Antitrust Act); W. Va. Code § 48-18-123 (2001) (Repl. Vol. 2009) (subpoena power of Bureau for Child Support Enforcement); W. Va. Code § 48-27-312 (1978) (Repl. Vol. 2008) (subpoena power in domestic violence proceeding); W. Va. Code § 50-5-4 (power of magistrate, magistrate court clerk; magistrate court deputy clerk or magistrate assistant to issue subpoena at the request of any party); W. Va. Code § 54-2-7b (1963) (Repl. Vol. 2008) (subpoena authority in condemnation proceeding).

[14]The relevant subpoena language in Article 1G is contained in W. Va. Code § 62-1G-2(b) (2011) (Supp. 2012):

When a law-enforcement agency is investigating a sexual offense against a minor, an offense of stalking . . . when the victim is a minor or an offense of child kidnapping . . . , and has reasonable suspicion that an electronic communications system or service or remote computing service has been used in the commission of a sexual offense against a minor . . . , an offense of stalking when the victim is a minor or an offense of child kidnapping, a magistrate or a circuit court judge may issue a subpoena, upon written application on a form approved by the

(continued...)

12

not enacted at the time of the conduct in this case; nor would it apply substantively even if it was in place when the conduct at issue in this case occurred. In the final analysis, Article 1G supports this Court's determination that W. Va. Code § 57-5-4 can be invoked only in the context of a pending legal proceeding; if this was not true, Article 1G would not be needed.

---

[14](...continued)
West Virginia Supreme Court of Appeals, to the electronic communications system or service or remote computing service provider that owns or controls the internet protocol address, websites, electronic mail address or service to a specific telephone number, requiring the production of the following information, if available, upon providing in the subpoena the internet protocol address, electronic mail address, telephone number or other identifier, and the dates and times the address, telephone number or other identifier suspected of being used in the commission of the offense:

    (1) Names;

    (2) Addresses;

    (3) Local and long distance telephone connections;

    (4) Records of session times and durations;

    (5) Length of service, including the start date and types of service utilized;

    (6) Telephone or other instrument subscriber numbers or other subscriber identifiers, including any temporarily assigned network address; and

    (7) Means and sources of payment for the service, including any credit card or bank account numbers.

### B. *Issuance of subpoena under Rule 17.*

Mr. McGill also contends that the prosecutor did not have authority under Rule 17 of the West Virginia Rules of Criminal Procedure to obtain a subpoena duces tecum when no legal proceeding was pending against him. The prosecutor argued below, but not in this appeal, "that the Motion and Order in this matter can also be viewed as the functional equivalent of a subpoena duces tecum pursuant to [Rule] 17(a) and (c)." The relevant provisions of Rule 17 provide as follows:

> (a) A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding. . . . The clerk shall issue a subpoena, signed and sealed but otherwise in blank, *to a party* requesting it, who shall fill in the blanks before it is served.
>
> . . . .
>
> (c) A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. . . . The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

(Emphasis added). Mr. McGill contends that the use of the phrase "party" in Rule 17(a) "presupposes the existence of an active case, not a mere investigation." We agree with Mr. McGill to the extent that an investigation is not being conducted by a grand jury.[15]

The trial court's reliance on Rule 17 fails for the same reasons cited under the discussion of W. Va. Code § 57-5-4. In other words, and we so hold, the subpoena authority under Rule 17 of the West Virginia Rules of Criminal Procedure requires a legal proceeding be pending in order for a subpoena duces tecum to issue. Consequently, if this Court gave the prosecutor's "motion a liberal reading, access might be had to the documents sought by considering the motion as a request for issuance of a subpoena duces tecum under Rule [17], if a proceeding were pending." *Sullivan v. Dickson*, 283 F.2d 725, 727 (9th Cir. 1960). However, in no legal proceeding was pending in the instant matter to support the application of Rule 17. Therefore, the motion filed by the

---

[15]While it is true Rule 17(a) provides that a subpoena may issue in a legal proceeding that does not have a "title", this language does not support the issuance of the subpoena duces tecum in this case. This language has been explained as being applicable to a grand jury proceeding:

> It is obvious that no title can be affixed to a pre-indictment grand jury investigation. Common sense and simple logic compel the conclusion that grand jury subpoenas, similar to those presently in issue before the Court, are not invalid merely because they lack a designation of "the title . . . of the proceedings".

*In re Patriarca*, 396 F. Supp. 859, 870 (D.C.R.I. 1975).

15

prosecutor could not support issuance of a subpoena duces tecum under Rule 17. *See*

*Application of Royal Bank of Canada*, 33 F.R.D. 296 (S.D.N.Y. 1963) (quashing a civil

subpoena duces tecum because no action had commenced); *State v. Williams*, 392 S.E.2d

181, 182 (S.C. 1990) ("State concedes that, as no action was pending against Williams,

the subpoena duces tecum was clearly defective."); *State v. Popenhagen*, 749 N.W.2d

611, 616 (Wis. 2008) ("The subpoenas did not require the banks, in the words of either

statute, to attend an 'action, matter or proceeding pending or to be examined into before'

the circuit court. . . . [T]hese subpoenas do not satisfy Wis. Stat. §§ 885.01 or 805.07,

namely because no proceeding is pending.").


      Our determination that the subpoena duces tecum issued in this case cannot

be supported by Rule 17 or W. Va. Code § 57-5-4 is consistent with this Court's

longstanding policy to "guard[] the power of subpoena jealously." *Huntington Human*

*Relations Comm'n ex rel. James v. Realco, Inc*., 175 W. Va. 24, 26 n.1, 330 S.E.2d 682,

685 n.1 (1985).[16] This jealousy is rooted in the right of every citizen to be free of

---

[16]Although neither party raised the issue, we are cognizant that a trial court "possesses the inherent power under the common law to issue a subpoena duces tecum ... where the interests of justice so require[]." *Matter of Computer Tech. Corp*., 337 S.E.2d 165, 167 (N.C. Ct. App. 1985). *See also Central Soya Co. v. Henderson*, 208 A.2d 110, 115 (R.I. 1965) ("The power to issue a subpoena duces tecum is inherent in the court, its purpose being to promote the prompt administration of justice[] and . . . statutory grants of similar authority that require the production of documents are only declaratory of the common law."). However, a trial "court has no authority to . . . issue a subpoena where there is no proceeding

(continued...)

16

unauthorized governmental intrusion into the affairs of his or her life. The right of individual privacy is too fundamental to grant the government unchecked authority to seek subpoenas "for purposes of harassment or to commence a 'fishing expedition.'" *Juniata Cnty. Childcare & Dev. Servs., Inc. v. Unemployment Comp. Bd. of Review*, 6 A.3d 1037, 1046 (Pa. Commw. Ct. 2010). *See also Rutland Herald v. Vermont State Police*, 49 A.3d 91, 109 (Vt. 2012) (Dooley, J., concurring in part and dissenting in part) ("[T]he issuance of an investigatory subpoena is . . . an intrusion into the basic rights of citizens. It is one of the greatest powers of the judiciary and, because of the invasion of citizens' privacy interests, a power that must be carefully regulated to ensure it is not misused.").

The "motion" that was filed in this case to obtain Mr. McGill's medical records is a prime example of the type of abuse that can occur when the government seeks private information without legal authorization. The motion submitted by the prosecutor set out the following:

> Now comes Jeffrey D. Cramer, Prosecuting Attorney for Marshall County, West Virginia, or his Assistant as so designated, who avers and alleges the following:

---

[16](...continued)
or action before it[.]" *In re Blake's Estate*, 272 N.Y.S.2d 597, 599 (1966). Insofar as we have determined that no legal proceeding was pending when the prosecutor sought the subpoena, the trial court could not exercise its inherent authority to issue the subpoena.

17

1. That Michael J. McGill, DOB: 11/28/1961 was involved in an incident requiring medical care and that the Marshall County Sheriff's Department is conducting an investigation of that incident.

2. That Michael J. McGill was treated at Reynolds Memorial Hospital on date somewhere between June 12th, 2009 and June 14th, 2009 and the records generated by that treatment are important to the investigation of the incident in which those injuries were sustained.

THEREFORE, in order to complete the police investigation, the State of West Virginia moves the Honorable Court to enter an ORDER requiring the release of those medical records from Reynolds Memorial Hospital to the custody of the Prosecuting Attorney or a member of the Marshall County Sheriff's department.

The summary and vague statements in this motion did not meet the standard articulated by this Court for issuance of a subpoena duces tecum. We have held that

> [a] subpoena duces tecum is available against third parties in both civil and criminal cases upon an adequate description of the material sought. Furthermore, it is necessary to show that the material is relevant to an issue in the case and that its proof is not otherwise practicably available.

Syl. pt. 4, *State v. Harman*, 165 W. Va. 494, 270 S.E.2d 146 (1980). It is clear that the above motion does not inform the trial court of the criminal issue the medical records were needed to establish. The motion speaks of an "incident" being investigated. Does the "incident" involve murder, rape, assault, child abuse, a terrorist plot, or any other criminal offense? The motion is silent on the most fundamental requirement. This

18

fugitive motion explains why we "jealously guard" the subpoena and will not sustain its

issuance without legal authority.


In determining that neither Rule 17 nor W. Va. Code § 57-5-4 may be

invoked by a prosecutor outside the context of a legal proceeding, we are mindful that the

investigative subpoena power of a prosecutor is reposed in the grand jury. Justice

Cleckley addressed the investigatory and subpoena power of the grand jury in *State ex rel.*

*Doe v. Troisi*, 194 W. Va. 28, 459 S.E.2d 139 (1995):

> The grand jury was originally created to carry out a
> vital and unique function in our criminal justice system. It is
> charged with the duty to investigate the possibility of criminal
> behavior. . . .  A grand jury's quest for information ends once
> an offense is identified or a determination made that no crime
> was committed.
>
> . . . .
>
> A grand jury's powers are so vast that many of the
> usual trial court procedures are suspended for grand jury
> proceedings. For example, a putative defendant in a grand
> jury proceeding does not have the right to have counsel
> present, unlike a defendant's constitutional right to counsel
> after indictment. . . .
>
> However, a grand jury's powers are not limitless and a
> circuit court not only has the power, but has an obligation to
> curb a grand jury's overreaching. . . .
>
> . . . .

As with other powers of the grand jury, the subpoena
power is broad. Indeed, a grand jury's subpoena duces tecum
carries with it a presumption of validity. . . .

*Troisi*, 194 W. Va. at 34-35, 459 S.E.2d at 145-46. *See United States v. Williams*, 504

U.S. 36, 46-48, 112 S. Ct. 1735, 1742, 118 L. Ed. 2d 352 (1992) ("[T]he whole theory of

the [grand jury's] function is that it belongs to no branch of the institutional government,

serving as a kind of buffer or referee between the Government and the people."). Insofar

as a grand jury is available for a prosecutor to seek issuance of a subpoena duces tecum,

there is no impediment to prosecutors seeking the type of records unlawfully obtained in

the instant case.

### C.  Harmless error.

Although we have determined that the trial court should have granted Mr.

McGill's motion to suppress the medical records because they were unlawfully obtained,

it does not automatically follow that he is entitled to a new trial. The State has asked that

this Court find harmless error in the event the medical records were deemed to be

obtained unlawfully. We have set forth the harmless error test to determine whether the

introduction of improper evidence in some instances constitutes reversible error or was

harmless:

Where improper evidence of a nonconstitutional nature
is introduced by the State in a criminal trial, the test to
determine if the error is harmless is: (1) the inadmissible
evidence must be removed from the State's case and a

20

determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979). *Accord State v. Day*, 225 W. Va. 794, 803, 696 S.E.2d 310, 319 (2010).

Under the facts of the instant case, we have no doubt that, after removing the improperly obtained medical records, the evidence was sufficient for the jury to find Mr. McGill guilty beyond a reasonable doubt of simple battery against Mr. Yoho. The prosecutor presented the following eyewitness testimony by Mary Ratliff that Mr. McGill punched and kicked Mr. Yoho:

> Q. And what's the first thing you saw when you got outside and could see the front yard from your vantage point on the front porch?
>
> A. That Mike Yoho, that we just met that afternoon, was out on the flat yard facing the camp. He was on his knees and he was slumped down over.
>
> Q. So he was not on all fours? He was slumped forward and -
>
> A. Slumped over and Mike [McGill] was yelling.
>
> Q. Okay. What did you see then?

21

A. After I yelled and told Mike [McGill] to get away from that man, he just picked him up by the hair of the head and just come right down on top of him, his face this way (indicating).

Q. With his fist?

A. Yes. And then he dropped – let go of the man's head and the man went down on the ground again, and Mike [McGill] went to the right side and kicked him and –

Q. How many times did he kick him?

A. I seen him kick him once and hit him once. That was it.

This testimony was corroborated by physical evidence of blood and tufts of bloody hair photographed at the crime scene and introduced into evidence. The prosecutor also introduced a photograph of Mr. Yoho's head and face, which showed injuries consistent with Mary Ratliff's testimony.[17] Additionally, there was admissible testimony by Mary Ratliff and Sheila McGill that Mr. McGill stated that he injured his hand and foot while beating Mr. Yoho. Mary Ratliff testified to this issue as follows:

Q. Did you have any conversations with the defendant on Sunday morning?

A. Yes.

Q. Tell the jury what that conversation was.

---

[17]Mr. McGill testified during the trial that he was attacked by Mr. Yoho and that he struck Mr. Yoho in self-defense. The jury's verdict indicates that it rejected the self-defense argument.

22

A. He said that he had to leave camp because he thought his hand was broken and his toe was messed up, and he was going to go to the hospital and that if anybody asked us, we would tell them that he had a four-wheeler – that he wrecked on a four-wheeler.

Sheila McGill testified to this matter as follows:

Q. Did you have a conversation with your cousin [Mr. McGill] about his injuries that he – strike that. Was your cousin complaining about any injuries to his body?

A. Yes.

Q. Where and what?

A. He had hurt his hand and his toe.

Q. Did he tell you how he thought he had hurt them?

A. I know he had told me that he hit him probably about four to six times.

Q. Did he tell you how he thought he injured his toe?

A. From kicking him.

In light of this evidence, the jury could find beyond a reasonable doubt that Mr. McGill committed simple battery against Mr. Yoho.

**IV.**

**CONCLUSION**

In view of the foregoing, we find that it was error for the trial court to allow the prosecutor to introduce evidence of Mr. McGill's medical records. However, this error was harmless beyond a reasonable doubt. Consequently, Mr. McGill's conviction and sentence are affirmed.

Affirmed.