

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __JAN 3 1 2019__

Fairhurst, CJ.
**CHIEF JUSTICE**

This opinion was filed for record

at __8 a.m.__ on __Jan 31, 2019__

Susan L. Carlson

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Respondent, | ) | No. 95015-6 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| THOMAS B. CLARK, MD, Pierce County | ) | |
| Chief Medical Examiner, and PIERCE | ) | |
| COUNTY MEDICAL EXAMINER, | ) | |
| | ) | |
| Appellants. | ) | Filed ___JAN 3 1 2019___ |
| | ) | |

FAIRHURST, C.J.—This case involves a practice that dates back to our earliest days as a territory—the coroner's inquest. Although we now typically use experts to determine the cause of an unnatural death, historically we relied on the verdict of a coroner's inquest jury. The parties before us ask how a coroner today may invoke the statutory authority that accompanies an inquest.

This case arose after Thomas B. Clark, MD, the Pierce County medical examiner (ME),[1] attempted to subpoena a video held by BNSF Railway Company of a fatal train-pedestrian collision. The parties dispute both whether Dr. Clark properly began a coroner's inquest and the extent of the subpoena power granted by the applicable statute. We are asked to determine whether Dr. Clark exceeded his authority in issuing the subpoena. We hold that because Dr. Clark never began an inquest, he did not have authority to issue the subpoena. We affirm the issuance of a writ of prohibition by the trial court. We also provide guidance as to the scope of the subpoena power, as this issue is likely to recur.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 5, 2017, a BNSF train was traveling through Puyallup, Washington, during heavy snow. R.S.[2] was standing on the tracks. According to witnesses at the scene, the train blew its whistle, but R.S. was struck and killed. Witnesses disagree about whether R.S. intentionally stayed on the tracks.

The train was equipped with a video camera that recorded the incident. The video was secured by the BNSF evidence preservation team and remains in the

---

[1] In populous counties, the county legislative authority may decide to appoint a medical examiner in lieu of electing a coroner. RCW 36.24.190. The medical examiner assumes the statutory duties performed by the county coroner. *Id.* Pierce County has chosen to appoint Dr. Clark as the medical examiner. *See* PIERCE COUNTY CODE 2.06.010(A)(5), (F).

[2] The name of the man who was killed is not material to the case. In the interests of protecting the privacy of his family, we refer to him by his initials only.

possession of BNSF today. After the death, Puyallup Police Department officers reviewed the video at the BNSF offices.

Dr. Clark then contacted BNSF to request a copy of the video to conduct a death investigation. Dr. Clark believes that if he views the video, he must maintain a copy of the video to comply with his obligations under the public record laws. MEs are obligated to keep death investigation records confidential. RCW 68.50.105(1).

BNSF informed Dr. Clark that it will retain the video for 40 years but will not release physical copies of the video because of concerns about the video being leaked. Instead, BNSF offered to show the video to Dr. Clark at any time, as many times as he would like to view it, and brought the video to the ME's office. No one at the ME's office viewed the video.

On March 14, 2017, Dr. Clark sent a memorandum to the Pierce County Superior Court administrator. The memorandum read as follows:

> Pursuant to RCW 36.24.020, please be advised that I am opening an inquest concerning the February 5, 2017 death of [R.S.] in Puyallup, Washington.
>
> Until further notice, however, Superior Court is not requested to provide persons to serve as a jury of inquest, nor to schedule a courtroom or related services, because my office is still gathering evidence concerning this matter. You will be advised when the status changes.

Clerk's Papers (CP) at 143. Dr. Clark has stated that it is now and always has been his intention to hold an inquest in this matter.

Dr. Clark then issued an inquest subpoena to BNSF, demanding the production of "[a]ll photographs, film or video" depicting the "events 5 minutes before, during and 5 minutes after" the collision. CP at 145. The subpoena bore cause number 2017-0326 and ordered BNSF to produce the evidence to the ME on or before March 31, 2017. BNSF was unable to find a case with this number on the Pierce County Superior Court's website and refused to comply with the subpoena.

BNSF sought a writ of mandamus to command Dr. Clark to withdraw the subpoena and a writ of prohibition to prevent him from enforcing the subpoena. BNSF argued that the memorandum to the court administrator was insufficient to convene an inquest and that, even if it was sufficient, the subpoena power granted by the statute allows subpoenas only for testimony and not for documents. The Pierce County Superior Court denied the writ of mandamus but entered a writ of prohibition requiring Dr. Clark to withdraw or not enforce the subpoena. Dr. Clark petitioned for direct review, which we granted.

## II. ANALYSIS

Coroners' inquests are governed by chapter 36.24 RCW. RCW 36.24.020 states that if a coroner decides to conduct an inquest, he or she "shall notify the superior court to provide persons to serve as a jury of inquest." We hold that this statute requires a coroner to request a jury before an inquest can begin. We also hold that a coroner has the power to issue a subpoena only once he or she has requested

4

a jury. Because Dr. Clark did not request a jury from superior court, he never convened an inquest and did not have authority to issue a subpoena. The trial court did not abuse its discretion by issuing a writ of prohibition, and we affirm.

Dr. Clark has made it clear that he intends to call an inquest jury and issue a new subpoena in this matter if this court affirms. In the interests of judicial economy, we explain that RCW 36.24.050 grants the power to subpoena this video but that the subpoena is returnable only to the inquest jury, not the coroner's office.

A.    Inquests and a coroner's subpoena power

1.    *Standard of review*

Statutory interpretation "is a question of law reviewed de novo." *State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018). "Statutory interpretation begins with the statute's plain meaning." *Id.* "Plain meaning is 'discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Id.* (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). If the statute is ambiguous, we apply "principles of statutory construction, legislative history, and relevant case law to assist us in discerning legislative intent." *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

2.    *Coroners must request a jury to begin an inquest*

We first hold that a coroner's inquest begins under the statute when the coroner requests a jury from superior court. Because Dr. Clark specifically told the superior court not to provide a jury, he did not begin an inquest.

A coroner's inquest is a proceeding in which a jury, instead of the coroner, determines the cause of death of an individual. "[T]he purpose of a coroner's inquest is to determine who died, what was the cause of death, and what were the circumstances surrounding the death, including the identification of any actors who may be criminally liable for the death." *Carrick v. Locke*, 125 Wn.2d 129, 133, 882 P.2d 173 (1994). If the coroner holds an inquest, then it is "the jury that decides the matter," not the coroner. *Thompson v. Wilson*, 142 Wn. App. 803, 818, 175 P.3d 1149 (2008).

Coroners' inquests are governed by chapter 36.24 RCW. Under RCW 36.24.020, a coroner may generally hold an inquest if a death appears to be unnatural. The statute is clear as to how a coroner may invoke the inquest authority: "[t]he coroner in the county where an inquest is to be convened pursuant to this chapter shall notify the superior court to provide persons to serve as a jury of inquest to hear all the evidence concerning the death and to inquire into and render a true verdict on the cause of death." RCW 36.24.020. This sentence discusses the county "where an inquest is to be convened." *Id.* By using the future tense, the statute

indicates that it is discussing what must occur before an inquest begins. The statute explicitly states that the coroner "shall notify the superior court *to provide persons to serve as a jury of inquest.*" *Id.* Therefore, the coroner must request a jury in order to begin an inquest. *See State v. Krall*, 125 Wn.2d 146, 149, 881 P.2d 1040 (1994) (stating "the general rule that 'shall' is presumptively mandatory").

Even if the language were not clear, the legislative history suggests the same result. Chapter 36.24 RCW "dates back virtually unchanged to the 1854 territorial laws of Washington." *Carrick*, 125 Wn.2d at 137-38. When it was originally adopted by the first legislative assembly of the Territory of Washington, it stated that when the coroner learns of an unnatural death, "he shall go to the place where the body is, and forthwith summon six good and lawful persons, qualified by law to serve as jurors, to appear before him forthwith, at the place where the body of the deceased is, to inquire into the cause of the death." LAWS OF 1854, § 3, at 436. In 1953, the chapter was amended to make inquests permissive rather than mandatory. At that time, this statute was changed to read, "The coroner shall summon six good and lawful persons to serve as jurors and to hear all the evidence concerning the death and to inquire into and render a true verdict on the cause of death." LAWS OF 1953, ch. 188, § 3. In 1988, the legislature amended the statute again to create uniformity in the way all kinds of jurors are selected, summoned, and compensated. LAWS OF 1988, ch. 188, § 1. The legislature amended the statute by replacing the "summon

six good and lawful persons" language with the current "notify the superior court to provide persons to serve as a jury of inquest." *Id.* § 18. The original language was clear that the coroner holding the inquest must summon the jury immediately. The 1953 amendment removed the word "forthwith" but maintained the mandatory "shall summon" language for a coroner's inquest. These amendments make the inquest process optional but do not authorize the coroner to start the inquest without requesting or summoning a jury.

This reading also comports with the understanding in prior cases. For example, in *In re Inquest into Death of Boston*, 112 Wn. App. 114, 117, 47 P.3d 956 (2002), the Court of Appeals summarized chapter 36.24 RCW as authorizing inquests that allow "the county coroner to summon and empanel jurors, to subpoena witnesses, and to issue arrest warrants." *See also Lee v. Jasman*, 183 Wn. App. 27, 57, 332 P.3d 1106 (2014) ("When determining the cause of death, a coroner may summon an inquest jury."), *aff'd*, 183 Wn.2d 633, 354 P.3d 846 (2015); *Thompson*, 142 Wn. App. at 818 ("[T]he coroner may call an inquest and seat a jury and, in that case, it is the jury that decides the matter."). None of these cases contemplated an inquest beginning without a jury being summoned.

In this case, Dr. Clark wrote a memorandum to the Pierce County Superior Court administrator stating that he was "opening an inquest," but that the "Superior Court is not requested to provide persons to serve as a jury of inquest" at this time.

CP at 143. Contrary to the statute, Dr. Clark did not "notify the superior court to provide persons to serve as a jury of inquest." RCW 36.24.020. In fact, Dr. Clark specifically told the superior court *not* to provide persons to serve as a jury of inquest. Because Dr. Clark did not request a jury, an inquest never began.

### 3. *A coroner's subpoena power is tied to inquests*

A coroner does not have general subpoena power. The subpoena power arises only once an inquest begins. Because Dr. Clark did not request a jury, he did not commence an inquest and he did not have authority to issue the subpoena.

RCW 36.24.050 provides the coroner with limited power to issue subpoenas. Under this section, "[t]he coroner must summon and examine as witnesses, on oath administered by the coroner, every person, who, in his or her opinion or that of *any of the jury*, has any knowledge of the facts." RCW 36.24.050. Under Washington law, "[s]tatutes on the same subject matter must be read together to give each effect and to harmonize each with the other." *US W. Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 118, 949 P.2d 1337 (1997). Because RCW 36.24.050 appears alongside several other sections governing inquests and explicitly mentions "the jury," the most natural reading is that the subpoena power is contingent on there being an inquest.

This interpretation also comports with the general understanding that the subpoena power does not arise until there is a matter pending before a tribunal. For

example, the West Virginia Supreme Court of Appeals held that despite the absence of a limitation in the statute, a court has no power to issue a subpoena duces tecum unless a case is pending before it. *State v. McGill*, 230 W. Va. 569, 573, 741 S.E.2d 127 (2013); *see also Rogers v. Superior Court*, 145 Cal. 88, 91, 78 P. 344 (1904) ("A witness can be compelled to answer only such questions as are legal and pertinent to a matter in issue *before a tribunal.*" (emphasis added)); *Chambers v. Oehler*, 107 Iowa 155, 158, 77 N.W. 853 (1899) ("[T]he pendency of some proceeding in court is necessary in order to warrant the issuance of process for witnesses. There being no case pending in this instance, the justice had no authority to issue a subpoena for a witness.").

However, once the coroner has properly begun the inquest process by requesting jurors, he or she is authorized to issue subpoenas returnable to the inquest jury. The coroner "conduct[s]" the inquest, RCW 36.24.020, and "examine[s]" the witnesses, RCW 36.24.050. The coroner must be allowed to issue subpoenas before the jury is actually empaneled to ensure that the coroner will have witnesses to examine once the jury is empaneled to hear the evidence.

4.    *This video is subject to a properly issued inquest subpoena*

The subpoena power granted by RCW 36.24.050 includes the power to subpoena the video in this case.

Because the word "subpoena" might mean either subpoena ad testificandum or subpoena duces tecum, or both, we look to the way "subpoena" was understood when this statute was enacted. As mentioned above, "RCW 36.24 dates back virtually unchanged to the 1854 territorial laws of Washington." *Carrick*, 125 Wn.2d at 137-38.[3] In the same legislative session that adopted this statute, the legislature passed a law discussing subpoenas in civil practice. This statute explains that a "subpoena may require not only the personal attendance of the person to whom it is directed, at a particular time and place to testify as a witness, but may also require him to bring with him any books, documents, or things under this control." LAWS OF 1854, ch. 32, § 296. In 1854, therefore, a "subpoena" included both the power to bring a witness in to testify and the power to require that witness to bring physical items with him or her.

---

[3] Indeed, the original version of the statute as adopted by the first legislative session in the Territory of Washington read as follows:

> The coroner may issue subpoenas for witnesses, to the sheriff or any constable of the county, returnable forthwith, or at such time and place as he may appoint, which may be served by any competent person.—He must summon, and examine as witnesses, on oath, by him administered, every person, who, in his opinion, or that of any of the jury, has any knowledge of the facts, and he may summon a surgeon or physician to inspect the body, and give, under oath, a professional opinion as to the cause of death.

LAWS OF 1854, § 6, at 436. The only changes between then and now are removing the language requiring the subpoenas to go to the sheriff or constable and making the language gender neutral. The next section included the language now at the end of RCW 36.24.050, "A witness served with a subpoena may be compelled to attend and testify, or be punished by the coroner for disobedience, in like manner as upon a subpoena issued by a justice of the peace." *Id.* § 7, at 437. The only amendment in this section was changing "justice of the peace" to "district judge."

Notably, another section of the original laws of this state did reference both "subpoenas and subpoenas duces tecum, as in ordinary cases at law," LAWS OF 1854, ch. 1, § 40 (emphasis omitted) (regarding elections). However, later, in chapter 32, § 296, the legislature explained that in ordinary cases at law, a "subpoena" alone can require a witness to testify and to bring documents. The legislature did not suggest that the word "subpoena" in the coroner's inquest statute had a narrower meaning than the definition adopted elsewhere in the same legislative session.

The way the 1854 legislature defined "subpoena" is in line with the definition of "subpoena" at the time. A legal dictionary from the mid-1800s defined a "subpoena" as a "writ by which persons are commanded to appear at a certain place, at a certain time, under a penalty." HENRY JAMES HOLTHOUSE, A NEW LAW DICTIONARY, CONTAINING EXPLANATIONS OF SUCH TECHNICAL TERMS AND PHRASES AS OCCUR IN THE WORKS OF LEGAL AUTHORS, IN THE PRACTICE OF THE COURTS, AND IN THE PARLIAMENTARY PROCEEDINGS OF THE HOUSES OF LORDS AND COMMONS 390 (2d ed. 1846) (emphasis omitted). The dictionary explains that there are several different kinds of subpoenas, including subpoenas ad testificandum and subpoenas duces tecum. *Id.* Both kinds of subpoenas involve compelling witnesses to attend in court. The subpoena duces tecum additionally requires the witnesses "to bring with them books or documents which may be in their possession, and which may tend to elucidate the subject-matter of the trial." *Id.* (emphasis omitted).

Because both forms of subpoenas can thus be fairly described as "subpoenas for witnesses," the phrasing of RCW 36.24.050 does not limit subpoenas to only subpoenas ad testificandum.

This is also a more logical reading of the statute. If the coroner lacked the power to require witnesses to bring physical evidence with them, then the inquest jury would not be able to see and evaluate one of the most crucial pieces of evidence in this case, an actual video of the death. The jury would have to make a determination based only on what other people told them that the video showed. Given the statute's requirement that the jury "hear all the evidence concerning the death," RCW 36.24.020, allowing the coroner to subpoena the video in this case would further legislative intent.[4] *See Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994) ("The purpose of statutory construction is to effectuate legislative intent.").

This court has also previously assumed that subpoena power includes the power to demand physical items. In *State ex rel. Sowers v. Olwell*, 64 Wn.2d 828, 829, 394 P.2d 681 (1964), an attorney was served with a subpoena duces tecum,

---

[4] In this case, the coroner issued a subpoena to a business for a video that he knows exists and contains evidence concerning the death. *Cf. State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007) (explaining that article I, section 7 of the Washington Constitution bars administrative subpoenas that go beyond business records to intrude on private affairs and are issued without judicial oversight). This is not a fishing expedition. *Cf. State v. Reeder*, 184 Wn.2d 805, 820-21, 365 P.3d 1243 (2015) ("Grand juries are not entitled 'to engage in arbitrary fishing expeditions.'" (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 299, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991))).

ordering him to bring a knife that his client had given to him to a coroner's inquest. This court held that the subpoena was defective in that case because it violated attorney-client privilege, but there was no mention of the coroner's inquest subpoena power being limited to only subpoenas ad testificandum. *See also In re Investigation of Death of Francis*, No. 8556, 1977 WL 199094, at *1 (Ohio Ct. App. Dec. 7, 1977) (unpublished) (reviewing a coroner's subpoena duces tecum without any mention of a lack of power to issue it despite Ohio Revised Code Annotated § 313.17 granting authority to "issue subpoenas for such witnesses as are necessary").

Finally, our decision today aligns with the only other court that appears to have confronted this issue. In New York, the statute governing coroners' inquests grants coroners the "power to subpoena and examine witnesses under oath." N.Y. COUNTY LAW § 674(4). Interpreting that statute, a New York court found that such a subpoena "is not restricted to merely asking questions of witnesses." *Brunner v. Registrar of Med. Records of De Graff Mem'l Hosp.*, 119 Misc. 2d 952, 953, 464 N.Y.S.2d 928 (Sup. Ct. 1983). Instead, "the reference generally, to the power to subpoena in [the statute], includes the power of subpoena duces tecum." *Id.*; *see also* 18 C.J.S. *Coroners and Medical Examiners* § 17 (2007) ("The coroner's statutory subpoena power is not restricted to the examination of witnesses but includes the power of subpoena duces tecum." (citing *Brunner*, 119 Misc. 2d at 953)).

14

5.   *Coroners may demand only that the subpoena be returned to the inquest jury*

Although the coroner may subpoena the video in this case, he or she may demand only that the witness bring the evidence to the inquest jury. The coroner is not entitled to summon the witness or the evidence to his or her office.

The statute allows the coroner to "issue subpoenas for witnesses returnable forthwith or at such time and place as the coroner may appoint." RCW 36.24.050. This language is unchanged from the original 1854 law. Under the original law, whenever a suspicious death occurred, the coroner was to "go to the place where the body is, and forthwith summon six good and lawful persons, qualified by law to serve as jurors, to appear before him forthwith, at the place where the body of the deceased is, to inquire into the cause of the death." LAWS OF 1854, § 3, at 436. The statute at that time clearly did not contemplate the coroner reviewing the evidence prior to summoning the jury. The legislature intended to allow subpoenas requiring the witness or evidence to appear before the jury immediately or to appear before the jury at a later place and time. This section does not allow a coroner to demand to see the subpoenaed evidence prior to the inquest.

This reading of the statute aligns it with how some other subpoenas operate. *See United States v. Wadlington*, 233 F.3d 1067, 1075 (8th Cir. 2000) (explaining that a subpoena that required a witness to come to the prosecutor's office the day before the grand jury proceeding indicated "improper use of grand jury subpoenas"

15

because the language allowing a subpoena to command a witness to "'attend and give testimony at the time and place specified therein'" applied only to "formal proceedings" and "does not authorize the Government to use grand jury subpoenas to compel prospective grand jury witnesses to attend private interviews with government agents"); *United States v. LaFuente*, 991 F.2d 1406, 1411 (8th Cir. 1993) ("The government may not use trial subpoenas to compel prospective trial witnesses to attend pretrial interviews with government attorneys."); *United States v. Keen*, 509 F.2d 1273, 1275, 1274 (6th Cir. 1975) (a subpoena may "be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at a formal proceeding," and it was "highly improper" to use a subpoena to attend a pretrial interview with the government).

Moreover, RCW 36.24.020 does not allow preinquest inspection of the evidence, and for good reason. The inquest jury must "hear *all* the evidence concerning the death." RCW 36.24.020. "The coroner must summon and examine as witnesses . . . *every* person, who, in his or her opinion or that of any of the jury, has *any* knowledge of the facts." RCW 36.24.050 (emphasis added). This strong language shows that the coroner who convenes an inquest has no need to see the evidence in advance because he or she does not have the discretion to view a piece of evidence or hear a particular witness statement and decide not to present it to the jury.

16

B.    Writ of prohibition

1.    *Standard of review*

A writ of prohibition "arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." RCW 7.16.290. A writ of prohibition may be issued only when (1) a government body is about to act in excess of its jurisdiction and (2) the opposing party does not have a "'plain, speedy, and adequate remedy in the course of legal procedure. The absence of either one precludes the issuance of the writ.'" *Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 722-23, 305 P.3d 1079 (2013) (quoting *Kreidler v. Eikenberry*, 111 Wn.2d 828, 838, 766 P.2d 438 (1989)).

The trial court's grant of a writ of prohibition is reviewed for abuse of discretion. *Id.* at 730. "A trial court abuses its discretion if a decision is manifestly unreasonable or based on untenable grounds or untenable reasons. 'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" *Id.* (citation omitted) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

2.    *The writ was correctly issued because Dr. Clark was exceeding his authority and BNSF did not have an alternative remedy at law*

The trial court did not abuse its discretion in issuing the writ in this case. Dr. Clark had not yet begun an inquest and did not have the power to issue a subpoena.

17

Because he nevertheless issued a subpoena, he was acting in excess of his jurisdiction, satisfying the first prong of the test. Because decisions surrounding coroners' inquests may not be directly appealed or set aside by the court, BNSF did not have an adequate remedy in the course of legal procedure, satisfying the second prong. *See Boston*, 112 Wn. App. at 119 ("Although some jurisdictions have recognized a limited right to petition for a writ of mandamus or prohibition against the coroner where the coroner has acted arbitrarily, direct appeal is uniformly disallowed."). The trial court's decision was well within its discretion.

## III. CONCLUSION

We affirm the trial court's order issuing a writ of prohibition requiring Dr. Clark to withdraw or not enforce the subpoena. The power to issue a coroner's inquest subpoena arises only when the coroner has actually asked the superior court to provide a jury. We also address the scope of the subpoena power, as a dispute over its extent is likely to arise as a result of this decision. RCW 36.24.050 authorizes a subpoena for the video in this case, returnable to the inquest jury.

Fairhurst, C.J.

WE CONCUR:

_____          _____
                                       Wiggins, J.

_____          _____
Madsen, J.                             González, J.

_____          _____
Owens, J.                              Gerry McCloud, J.

_____          _____
Stephens, J.                           Yu, J.