# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parenting and Support of: | No. 53725-7-II |
| A.M.S., | |
| Child, | |
| SHELDON AARON SANDERS, | UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| SADIE JOHANNA ENGEBRETSON, | |
| Appellant. | |

MAXA, J. – Sadie Engebretson appeals the trial court's order ruling that there was not adequate cause to schedule a hearing on her petition to modify the parenting plan relating to AMS, the son of Engebretson and Sheldon Sanders, and dismissing the petition.

The parenting plan provided that AMS's residential placement would be shared equally between Engebretson and Sanders in a week on/week off arrangement. Less than six months later Engebretson filed a motion to modify the parenting plan to a four days on/four days off arrangement, claiming that Sanders's work schedule and AMS's reaction to that schedule constituted a substantial change in circumstances.

We hold that (1) the trial court did not err in finding no adequate cause for a hearing on modifying the parenting plan under RCW 26.09.260(5) because Engebretson did not present

sufficient evidence to support a finding of a substantial change in circumstances; and (2) the trial court did not err in denying Engebretson's motion for reconsideration, which was based on additional evidence. Accordingly, we affirm the trial court's dismissal of Engebretson's petition to modify the parenting plan.

FACTS

*GAL Report and Parenting Plan*

Engebretson and Sanders are the parents of AMS, who was born in March 2012. They have never been married. In April 2017, Sanders filed a petition for a parenting plan in Cowlitz County. The parties agreed on and implemented a week on/week off residential schedule.

In January 2018, the trial court appointed a guardian ad litem (GAL) for AMS. The GAL undertook an investigation and in May 2018 prepared a lengthy report. The GAL reported that:

- Sanders recently had obtained employment with a four days on/four days off schedule from 5:00 AM to 4:00 PM.

- There had been an allegation that AMS had been sexually abused by MS, Sanders's developmentally disabled 12-year-old brother. The parties agreed that there would be no contact between MS and AMS.

- Engebretson reported that AMS needed to attend counseling. "For the past two years [AMS's] behavior within her home has included angry outbursts and aggressive behavior. This behavior seems to occur most often when [AMS] returns from Sheldon's and becomes overly angry and aggressive after he spends time at Sheldon's mothers when [MS] may be present." Clerk's Papers (CP) at 47.

- "[AMS's] behavior was significantly different within both households during the home visits. In his father's home he was kind and polite and in his mother's he was emotional and angry fighting for all of the attention." CP at 52.

- AMS told the GAL that he liked the residential schedule and did not think that the amount of time between parents was too long.

- A counselor diagnosed AMS with an adjustment disorder and referred AMS to counseling sessions a few times per month beginning in late May.

The GAL recommended a residential schedule that was consistent with Sanders's four days on/four days off work schedule. She also recommended that AMS not be allowed to spend the night with Sanders's parents if MS was present and that AMS not be left alone with MS.

In October 2018, the trial court entered a final parenting plan. Both parties agreed to the parenting plan. And the GAL certified that the parenting plan could be signed without notice to her. The parenting plan provided that Engebretson and Sanders would equally share residential placement, with AMS living with each parent every other week.

*Petition for Modification*

In April 2019, Engebretson filed a petition for a minor modification of the parenting plan under RCW 26.09.260(5). Engebretson also filed a motion for adequate cause decision on holding a hearing on the petition to change the parenting plan as required under RCW 26.09.270.

As grounds for the minor modification, Engebretson stated, "The situation of the child/ren, a parent, or a non-parent custodian has changed substantially." Clerk's Papers (CP) at 71. In her declaration in support of her petition, she alleged substantial changes in circumstances: Sanders's new work schedule that prevented him from spending meaningful time with AMS four days a week and AMS's difficulty adjusting to the residential schedule.

In her declaration, Engebretson stated,

> The problem is the Petitioner's current work schedule of four days on and four days off. In addition, he is on call and regularly goes to work at 4 am and doesn't get home until as late as 8 or 9 pm. Thus on his work days, he is unavailable for [AMS].
>
> Having a week-on/week-off residential schedule means that there are up to four days a week that the Petitioner is not spending with our son.
> . . .
>
> Our son has not been doing well on this schedule at all. . . . [AMS] is acting out. [AMS's] teachers have reported [AMS] crying in class and that he has begun self-harm including banging his head against the wall, hitting himself in the head and

3

> calling himself "stupid." [AMS] recently has made comments such as "I just want to die in a fire" and "I wish I was never born."
>
> [AMS's] mental health is extremely concerning to me. These behaviors have been getting progressively worse. I felt it was necessary to get him help through counseling ASAP. I have . . . had [AMS] seen by counselors at his school.
> . . . .
>
> [Sanders's] current significant other has a son, [W] age 10. From what [AMS] states, [W] is very mean to him and hurts him. I believe the acting out is a direct result of [AMS] being left alone or spending substantial time with [W] without [Sanders] being present.
> . . . .
>
> [Sanders] has refused to communicate with me regarding counseling. After the comment about dying in a fire I made an appointment for [AMS] with his counselor. The soonest they could get [AMS] in was April 19 which was [Sanders's] time. He refused to respond to my text message and the appointment was lost. The next appointment available for my time is May 9. That is simply too long for [AMS] to go without help.
> . . .
>
> Because of [Sanders's] new work schedule and the problems I am witnessing with [AMS], I propose a minor modification of the residential schedule to coincide with [Sanders's] work schedule.

CP at 79-81. Engebretson requested that the residential schedule be modified to coincide with Sanders's work schedule.

Engebretson also submitted a declaration from AMS's maternal grandmother, Jacqui Bach; a letter from AMS's maternal aunt, Rachael Worthington, who worked at AMS's school; and an email from AMS's teacher, Katie Watkins. Bach noted a shift in AMS's emotional wellbeing from a "happy, fun, energetic boy" to a "sullen, quiet, moody and angry child," which had gotten progressively worse over the previous few months. CP at 83. She stated that on April 11 AMS was hitting himself and saying "I'm stupid," "I just want to die," and "I wish I was never born." CP at 83. Worthington noted that AMS often was frustrated, upset, anxious and unwell while he was at Sanders's home. She stated that AMS was happy, lighthearted and a

4

"completely different kid" during his time with his mother. CP at 86. And Watkins noted that AMS had displayed a "roller coaster of emotions" over the previous two weeks and that she had heard his negative self talk. CP at 102.

In a responsive declaration, Sanders acknowledged that AMS previously had been placed in counseling due to his "anger and outbursts largely at [Engebretson's] home." CP at 92. According to Sanders,

> [AMS] has graduated from the counseling that the GAL recommended. . . . [Engebretson] then had [AMS] reevaluated for additional counseling through Lower Columbia Wellness Center due to continued behaviors observed in her home. Until I was served with the current request for modification, I was unaware that [Engebretson] had signed [AMS] up for counseling at school . . . two (2) days before filing this modification action.
> . . . .
>
> In regards to [AMS's] verbal outburst . . . I met with [AMS's] general education teacher on April 22, 2019 to inquire about the statements [Engebretson] claims came from our child. Mrs. Katie Watkins specifically indicated that she had never heard the comment, "I just want to die in a fire" from [AMS] until that very day (three days after the modification action was filed). . . . Ms. Watkins also made a point to inform me that other children in his classroom have been using that same statement.

CP at 92. Sanders also stated that AMS and his girlfriend's son had a typical sibling relationship, which sometimes involved arguing and nit-picking one another. He did not believe that this relationship was cause for concern.

In reply, Engebretson submitted a declaration in which she stated that AMS seemed to be suffering under the current schedule. She emphasized that she was not seeking a modification of Sanders's total time with AMS. She requested that the court find adequate cause and reappoint the GAL to determine what was in AMS's best interests.

5

The trial court entered an order ruling that there was not adequate cause to schedule a full hearing and dismissed Engebretson's petition to modify the parenting plan. In its oral ruling, the court stated:

> [I]n preparing for the case, I did look back through the Guardian ad Litem Report. . . . She did recommend a four-on/four-off, but she also signed off on this agreed - - apparently agreed order that was negotiated, or something. So, she felt that that was an appropriate resolution, or she would not have signed off, I assume. . . .
>
> [W]hen I look at the declarations, when I compared that with the Guardian ad Litem Report in full, as kind of how we got here, I don't think I can make an adequate cause finding today.

Report of Proceedings at 9.

*Motion for Reconsideration*

Engebretson filed a motion for reconsideration. She argued that the trial court erred in finding no adequate cause for a minor modification under RCW 26.09.260(5) based on what Engebretson argued was newly discovered evidence under CR 59(a)(4).

In the declaration attached to her motion, Engebretson stated that AMS suffered a mental health episode at school on May 6 – the day before the adequate cause hearing – in which AMS expressed thoughts of self-harm. Engebretson noted that this episode followed an overnight camping trip with Sanders:

> Unbeknownst to me, [Sanders] took [AMS] out of school Friday May 3rd to go camping. I was only made aware of this when the school para-professional, Ms. Worthington, called me to inquire as to where [AMS] was. It was only after that phone call that I learned [Sanders] had taken [AMS] out of school.
>
> I have learned that the camping trip of May 3rd included [Sanders's] brother, [MS]. . . . [MS] inappropriately touched [AMS] when he was younger. [MS] is developmentally delayed and because there was no collaborating evidence, no criminal charges were brought. Nevertheless, . . . [MS] is a trigger for [AMS]. On the weekend of May 3rd [AMS] was required to go camping the entire weekend with [MS] present. I knew none of this at the time. Following that weekend [AMS] had the mental and emotional breakdown that occurred on May 6th. None of this could have been before the Court for the hearing on May 7th."

6

CP at 121.

According to Engebretson, AMS's mental health issues could not be adequately addressed under the parenting plan:

> [Sanders] has indicated that he will not allow [AMS] to enter counseling outside of school counseling . . . [and] he will not take [AMS] to counseling during his time. Under the current week-on/week-off schedule, [AMS] would go a minimum of two weeks between appointments. If we changed the parenting plan to coincide with [Sanders] work schedule of four-days-on/four-days-off, I can schedule [AMS's] counseling weekly for as long as needed.

CP at 121.

Engebretson attached three exhibits that postdated the adequate cause hearing. The first exhibit contained an email from AMS's teacher, Watkins, describing a mental health episode AMS had in class on May 6, the day before the adequate cause hearing. The second exhibit contained a letter from AMS's counselor at Lower Columbia Wellness recommending weekly counseling, documenting AMS's diagnosis of "oppositional defiant disorder," and stating that he is "currently being monitored for Depression and Suicidal Ideation." CP at 126. And the third exhibit contained a letter from AMS's pediatrician diagnosing AMS with "adjustment disorder with disturbance of emotions and conduct" and recommending continued counseling with both AMS's counselors at school and at Columbia Wellness. CP at 128.

Sanders opposed the motion to reconsider with a response declaration. Attached to his declaration, Sanders provided an exchange of text messages with Engebretson. In those messages, Sanders stated:

> I agree with core health individual counseling for [AMS] as he does need it. I also agree that he can have his counseling at the school for his counseling sessions. I disagree with lower Columbia counseling as he needs to have sessions just him and the therapist and not with parents present.

CP at 136.

The trial court denied Engebretson's motion for reconsideration. In its written order denying reconsideration, the court ruled:

> The parties have been exercising a week on, week off, residential schedule for over a year. In review of the Guardian ad Litem report, they have been effectively managing that plan. The recommendation of a 4 on, 4 off, schedule creates less stability and increases the number of transitions for the child. The child has expressed, at least to the GAL, that he is comfortable with the existing schedule.
>
> The letters related to counseling simply do not give rise to a finding of adequate cause for a change to the parenting plan. The statements by the child are quite concerning, and the parties should continue to seek counseling for him, however there is nothing indicating that the residential schedule has anything to do with the current behavioral episodes. If the current plan had recently been changed and we were seeing reactive behaviors, the situation might be different, but that is not the case. The child has been operating under the current system in excess of a year before the final plan was agreed to and adopted by the Court. The simple entry of an order memorializing what the parties have been doing for the past year cannot be seen as a trigger for the behavior.

CP at 145-46.

Engebretson appeals the trial court's order ruling that there was no adequate cause to schedule a hearing on her motion to modify the parenting plan and the court's denial of her motion for reconsideration.

## ANALYSIS

A.   ADEQUATE CAUSE FOR HEARING ON MINOR MODIFICATION

Engebretson argues that the trial court erred when it found that there was not adequate cause for a hearing on her petition for a minor modification of the parenting plan. We disagree.

### 1.   Statutory Process for Modification

RCW 26.09.260 addresses the grounds for modifying a parenting plan. Under RCW 26.09.260(1), the general rule is that the trial court will not modify a parenting plan unless the court finds based on facts that have arisen since the parenting plan or were unknown to the court at the time of the plan "that a substantial change has occurred in the circumstances of the child or

8

the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." In addition, the court must retain the residential schedule in the parenting plan unless one of the four factors listed in RCW 26.09.260(2) is present.

However, RCW 26.09.260(5) allows a trial court to adjust residential aspects of a parenting plan through a minor modification in the residential schedule without considering the RCW 26.09.260(2) factors "upon a showing of a substantial change in circumstances of either parent or of the child." The court must base its determination of a substantial change in circumstances on facts unknown to the court at the time of the prior decree or plan or arising since entry of the decree or plan. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 105, 74 P.3d 692 (2003). Unknown facts include those that were not anticipated by the court at the time of the prior plan. *Id*. The minor modification procedure is available only if (1) the modification "does not change the residence the child is scheduled to reside in the majority of the time," and (2) at least one of three listed conditions are met. RCW 26.09.260(5).

A party seeking to modify a parenting plan must submit a motion and an affidavit setting forth facts showing adequate cause for the requested modification. RCW 26.09.270. The trial court must deny the motion without a hearing unless the affidavit establishes adequate cause to schedule a hearing. RCW 26.09.270; *see In re Marriage of MacLaren*, 8 Wn. App. 2d 751, 770-71, 440 P.3d 1055 (2019). If the court finds adequate cause, the court must schedule a hearing on an order to show cause why the requested modification should not be granted. RCW 26.09.270.

To show adequate cause, the petitioner must present evidence that would support a modification under RCW 26.09.260. *MacLaren*, 8 Wn. App. 2d at 774.[1] The petitioner must do more than assert unsupported allegations that would support modification if proved. *Id.* at 771. "[T]he moving party must set forth facts and provide supporting evidence – not self-serving or conclusory statements – to establish adequate cause." *Id.* at 774. At a minimum, "adequate cause" requires evidence sufficient to support a finding on each fact the moving party must prove to modify the parenting plan. *Id.* at 772-73.

There is a strong statutory presumption against modification of parenting plans because custodial changes are disruptive to children. *Id.* at 771. Therefore, the statutory adequate cause requirement imposes a heavy burden on the petitioner that must be satisfied before a hearing even will be scheduled. *Id.*

We review a trial court's determination of adequate cause for a proposed parenting plan modification for abuse of discretion. *In re Parentage of Jannot*, 149 Wn.2d 123, 128, 65 P.3d 664 (2003). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). More specifically, "the procedures and criteria set forth in RCW 26.09.260 limit the superior court's range of discretion." *In re Marriage of Hoseth*, 115 Wn. App. 563, 569, 63 P.3d 164 (2003). Therefore, the superior court abuses its discretion if it fails to base its modification ruling on the statutory criteria. *Id.*[2]

---

[1] *MacLaren* involved a petition for a major modification of the parenting plan. 8 Wn. App. 2d at 754. However, the threshold finding of a substantial change in circumstances is the same for either a major or a minor modification of a residential schedule established in a parenting plan. *Tomsovic*, 118 Wn. App. at 105-06.

[2] Engebretson argues that we should articulate a new standard for determining adequate cause in seeking a minor modification. Specifically, she claims that we should find adequate cause for a

10

2.      Adequate Cause under RCW 26.09.260(5)

To obtain a minor modification under RCW 26.09.260(5), there must be a "substantial change in circumstances of either parent or of the child." To establish adequate cause, Engebretson had to present sufficient evidence to support a finding of a change in circumstances. *MacLaren*, 8 Wn. App. 2d at 772-73. The trial court did not expressly address this requirement in initially finding no adequate cause.

Engebretson's petition for a minor modification primarily was based on the assertion that there had been a substantial change in circumstances due to Sanders's work schedule. However, it is undisputed that Sanders had worked a four-on, four-off schedule at the time the parenting plan was entered and for the previous five months. Engebretson concedes this point. As noted above, the trial court must base its determination of a substantial change in circumstances on facts arising since entry of the decree or plan. *Tomsovic*, 118 Wn. App. at 105. Therefore, Sanders's work schedule cannot support a finding of adequate cause for a hearing.

Engebretson also argues that AMS's reaction to Sanders's work schedule – as evidenced by his worsening mental health struggles – constituted a substantial change in circumstances. She claims that although Sanders's work schedule changed before entry of the parenting plan, the effects of that change on AMS were unknown at that time.

A child's mental health issues and particularly suicidal ideation should be taken very seriously. However, in order to support a change in the parenting plan based on a finding of a

---

hearing "[i]f viewed in [the] light most favorable to the moving party, a reasonable person could argue there is a stated detriment to the child given the circumstances." Br. of Appellant at 19. We decline to do so and continue to follow the well-established standards for reviewing a determination regarding adequate cause.

substantial change in circumstances, these mental health issues must have some connection with the parenting plan.

Engebretson presented evidence that AMS's mental health had worsened since the time the parenting plan was entered. We acknowledge that if AMS's worsening mental health was related to the existing parenting plan, that fact could support a finding of substantial change in circumstances. However, three factors suggest that AMS's worsening condition was not related to the parenting plan and specifically to Sanders's work schedule.

First, Engebretson reported to the GAL that AMS had demonstrated aggressive behavior and angry outbursts in her home for the previous two years. This behavior obviously predated Sanders's schedule change, which had occurred around May 2018, and entry of the parenting plan in October 2018. And AMS was diagnosed with an adjustment disorder and referred to counseling in May 2018. All this was known when the parenting plan was entered.

Second, AMS's worsening condition apparently had started shortly before Engebretson filed her petition in April 2019. Bach, AMS's grandmother, reported that AMS's emotional health had progressively worsened over the previous few months. She reported a disturbing incident on April 11 when AMS was hitting himself and saying "I'm stupid," "I just want to die," and "I wish I was never born." CP at 83. In an email to Watkins, AMS's teacher, Engebretson stated that AMS's behavior had been worse beginning two weeks earlier. Watkins responded that AMS had displayed a "roller coaster of emotions" over the previous two weeks. CP at 102. The timing of AMS's worsening condition is significant because by April 2019, Sanders had been working at his current schedule for at least 11 months and the parenting plan had been in place for six months.

Third, Engebretson presented no evidence that AMS's worsening condition was connected to Sanders's work schedule or the parenting plan. Worthington, AMS's maternal aunt, attributed AMS's problems to the fact that he spent so much time at Sanders's home – not to Sanders's work schedule. And Engebretson believed that there was a connection, but her statements in this regard were conclusory and unsupported by actual evidence. Self-serving or conclusory statements are not sufficient to establish adequate cause. *MacLaren*, 8 Wn. App. 2d at 774.

Worsening mental health issues also can support a change in the parenting plan if one of the parents is not responding appropriately to those issues. *See MacLaren*, 8 Wn. App. 2d at 776-77. In *MacLaren*, the child was diagnosed with autism spectrum disorder and had mental health problems, including suicidal ideation. *Id*. at 761. The child's mother and primary residential parent disagreed with the autism diagnosis and refused to engage in autism treatment for the child. *Id*. at 776. The court held that these facts would support finding a substantial change in circumstances. *Id*.

But here, Sanders has acknowledged AMS's mental health issues. He also agrees that AMS should receive counseling.

Engebretson's actual argument appears to be that a four days on/four days off arrangement would be "better" for AMS. According to Engebretson, this arrangement would (1) provide more parental supervision when AMS was with Sanders, (2) help alleviate allegations that Sanders's girlfriend's son was mistreating AMS, (3) allow Sanders to spend more time with AMS because he would not be at work when AMS was at his home, and (4) allow AMS to get counseling every week. But the requirement under RCW 26.09.260(5) is a substantial change of circumstances, not that a different residential schedule would be "better."

13

Under the specific facts of this case, AMS's mental health struggles do not provide sufficient evidence to support a finding of a substantial change in circumstances as required for a minor modification under RCW 29.09.260(5). Therefore, we hold that the trial court did not abuse its discretion in finding no adequate cause for a full hearing on modifying the parenting plan.

B.     DENIAL OF MOTION FOR RECONSIDERATION

Engebretson argues that the trial court abused its discretion when it denied her motion for reconsideration of the order denying her petition for a minor modification. We disagree.

We review a trial court's decision on a motion for reconsideration for abuse of discretion. *Phillips v. Greco*, 7 Wn. App. 2d 1, 9, 433 P.3d 509 (2018). An abuse of discretion occurs when the decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* The trial court's decision is manifestly unreasonable if it exceeds the range of acceptable choices, in light of the facts and applicable law. *BNSF Ry. Co. v. Clark*, 192 Wn.2d 832, 846, 434 P.3d 50 (2019).

Engebretson challenges several of the trial court's findings of fact and conclusions of law in the order denying the motion for reconsideration. We reject these challenges.

First, Engebretson argues that substantial evidence does not support the court's finding that the "[t]he recommendation of a 4 on, 4 off, schedule creates less stability and increases the number of transitions for the child." CP at 145-46. But such an arrangement necessarily would interrupt the existing schedule and require that AMS adapt to a schedule with shorter intervals of time with each parent. And the transfer would be on a different day of the week each time.

Second, Engebretson argues that the court erred in concluding that "The letters related to counseling simply do not give rise to a finding of adequate cause for a change to the parenting

14

plan." CP at 146. In one letter, AMS's mental health primary care provider recommended that AMS see a counselor on a weekly basis until his symptoms stabilized and cautioned that "[failure to] do so could be detrimental to [AMS's] immediate and long-term mental health." CP at 126. In the other letter, AMS's pediatrician recommended that AMS would continue to benefit from counseling. Although these letters indicated a change in AMS's mental health, they did not necessarily show a change in circumstances sufficient to support a finding of adequate cause.

Third, Engebretson assigns error to the court's failure to acknowledge Sanders's resistance to counseling alongside its recommendation that the "parties should continue to seek counseling for [AMS]." CP at 146. But Sanders voiced support for counseling sessions: "I agree with core health individual counseling for [AMS] as he does need it. I also agree that he can have his counseling at the school for his counseling sessions." CP at 136.

Fourth, Engebretson argues that substantial evidence does not support the court's finding that "there is nothing indicating that the residential schedule has anything to do with the current behavioral episodes." CP at 146. But although the record reflects a recent change in AMS's mental health, there was no change in the residential schedule from the time at which the parenting plan was entered to the filing of the motion for adequate cause.

Fifth, Engebretson argues that substantial evidence does not support the court's finding that "[AMS] has been operating under the current system in excess of a year." CP at 146. She claims that the parenting plan had only been in place for six months when she petitioned for a modification and moved for adequate cause. But the record shows that Engebretson and Sanders had been operating under the week on/week off schedule since Sanders filed his petition in April 2017.

Sixth, Engebretson challenges the court's finding that "the simple entry of an order memorializing what the parties have been doing for the past year cannot be seen as a trigger for the behavior." CP at 146. But as noted above, Engebretson and Sanders had already been operating under the same arrangement for more than a year before the parenting plan was entered. The parties memorialized that schedule when the parenting plan was entered. Engebretson failed to present sufficient evidence that adhering to that schedule contributed to AMS's mental health struggles.

The standard of review for an order denying a motion for reconsideration is abuse of discretion. *Greco*, 7 Wn. App. 2d at 9. We conclude that the trial court did not abuse its discretion in denying the motion for reconsideration.

C.     REQUESTS FOR ATTORNEY FEES

Engebretson requests reasonable attorney fees on appeal under RCW 26.26B.060[3], which provides in relevant part, "The court may order that all or a portion of a party's reasonable attorney's fees be paid by another party." Engebretson contends that she is entitled to an award of fees because of financial hardship. But Engebretson is not the prevailing party on appeal, and she cites no authority for the proposition that RCW 26.26B.060 supports an award of fees to a nonprevailing party based on financial hardship. *See In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 423, 471 P.3d 228 (2020). Therefore, in the exercise of our discretion we deny Engebretson's request for attorney fees.

Sanders requests an award of attorney fees he incurred in defending against this appeal as sanctions for a frivolous appeal under RAP 18.9(a). But Engebretson's appeal raised a debatable

---

[3] RCW 26.26B.060 has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 26.26B.060.

issue as to the trial court's finding of no adequate cause. Therefore, we deny Sanders's request for attorney fees.

CONCLUSION

We hold that the trial court did not err in finding no adequate cause for a hearing on modifying the parenting plan or in denying the motion for reconsideration. Accordingly, we affirm the trial court's dismissal of Engebretson's petition to modify the parenting plan.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
MELNICK, J.